**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2349
_____

MAURICE R. DUHANEY,

Petitioner

v.

THE ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review of a Decision and Order of
the Board of Immigration Appeals
(BIA No. A30-114-908)
Immigration Judge:  Andrew R. Arthur

Argued June 10, 2010

Before:  AMBRO, CHAGARES, and GREENAWAY, JR.,
<u>Circuit</u> <u>Judges</u>.

(Filed: September 14, 2010)

Daniel M. Gonen
Christos Ravanides (Argued)
Four Times Square
New York, NY 10036
        *Counsel for Petitioner*

Tony West
Greg D. Mack
Manuel A. Palau (Argued)
Richard M. Evans
Paul Fiorino

U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
    *Counsel for Respondent*

_____

OPINION

_____

CHAGARES, Circuit Judge.

Maurice Duhaney petitions for review of the April 22, 2008, decision by the Board of Immigration Appeals ("BIA"), finding Duhaney removable as an alien convicted of an aggravated felony under Immigration and Nationality Act ("INA") section 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). This order of removal was based on a 1985 conviction for criminal possession of a weapon in the second degree, which Duhaney contends the Government could have raised as a ground for removal during prior immigration proceedings. Having failed to charge him as deportable based on this conviction during the prior proceedings, he argues that the Government should have been precluded from doing so in subsequent proceedings. Duhaney also argues that the BIA committed procedural error and deprived him of the right to present arguments on his own behalf. For the reasons set forth below, we will deny the petition.

I.

Duhaney was born in Jamaica on November 12, 1965. In 1973, at the age of seven, he was admitted to the United States as a lawful permanent resident and has resided in the United States ever since. On September 11, 1985, a jury convicted Duhaney of manslaughter in the second degree and criminal possession of a weapon in the second degree, based on the fatal shooting of Vincent Santiago, Jr. (the "1985 shooting convictions"). The jury acquitted Duhaney of murder in the second degree and manslaughter in the first degree. Duhaney was sentenced to consecutive terms of five to fifteen years for each conviction.

2

While Duhaney was awaiting trial for these charges, he was arrested and charged with possession of a controlled substance with the intent to sell. On October 1, 1985, Duhaney pled guilty to criminal sale of a controlled substance (the "1985 controlled substance conviction"). He was sentenced to one to three years in prison. Based on these three convictions, Duhaney remained incarcerated until 1995.

On June 24, 1986, the Immigration and Naturalization Service (INS) issued an Order to Show Cause (the "1986 OTSC") charging Duhaney as deportable pursuant to former INA section 241(a)(11), 8 U.S.C. § 1231(a)(1) (1986), based on the 1985 controlled substance conviction. Administrative Record ("A.R.") 910. The 1986 OTSC did not mention the 1985 shooting convictions. Id. In response to the 1986 OTSC, Duhaney submitted a Form I-191 requesting a waiver of deportation pursuant to former INA section 212(c) in September 1992. A.R. 905-06. In his application for a § 212(c) waiver, Duhaney disclosed all three convictions. A.R. 906.

In August 1993, an Immigration Judge ("IJ") held a hearing on Duhaney's request for a § 212(c) waiver. The IJ asked the INS attorney about the firearms conviction, and the INS attorney stated his belief that the since the OTSC was issued before March 1, 1991, the firearms conviction could not be used as a basis for deportability. A.R. 369. The INS attorney further noted, "I don't think we'd ever charge him, Judge, but the possibility exists that it could be charged in the future. I would hope that the Service doesn't do that." A.R. 370. The IJ commented he would "leave that for another day," although he expressed "real reservations about whether the Service could do that," as the issue presented a "res judicata question." Id. The IJ accepted the INS attorney's representation that these other convictions did not render him statutorily ineligible for a § 212(c) waiver. Id. In the oral decision granting Duhaney's request for a waiver, the IJ first noted that Duhaney had admitted the allegations in the OTSC and conceded that he was deportable. A.R. 377. The IJ discussed both the 1985 substance abuse conviction cited in the OTSC and the 1985 shooting convictions, noting that the manslaughter conviction amounted to a crime involving moral turpitude. A.R. 383-84

3

(citing In re Wojtkow, 18 I. & N. Dec. 8411 (BIA 1981)). The Government elected not to appeal, and these first deportation proceedings were terminated on August 20, 1993. A.R. 425.

On March 24, 2000, Duhaney pled guilty to criminal possession of a controlled substance in the third degree (the "2000 conviction"). On March 25, 2004, the Government issued a Notice to Appear (NTA) charging that the 2000 conviction rendered him removable on two grounds: (1) as a conviction for a crime relating to a controlled substance under INA section 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i); and (2) as a conviction of an aggravated felony under INA section 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), which is defined to include a drug trafficking crime under INA section 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B) (the "2004 NTA"). A.R. 931. In October 2004, an IJ ordered Duhaney removed based on the 2000 conviction. A.R. 746-48. In January 2005, the BIA affirmed this removal order, making it the final agency determination (the "2005 removal order" or the "2005 removal proceedings"). A.R. 752.

On August 9, 2006, the New York Supreme Court vacated the 2000 conviction and dismissed the indictment with prejudice. A.R. 440. Thereafter, Duhaney filed a pro se motion with the BIA to reopen and terminate the 2005 removal proceedings; the BIA received the motion on December 4, 2006.[1] A.R. 695-706. On December 5, 2006, the Government also moved to reopen the 2005 removal proceedings. A.R. 688-90. The Government's motion acknowledged that Duhaney was no longer removable based on the now-vacated 2000 conviction, but the motion stated the Government's belief that Duhaney "may be removable . . . on the basis of other, separate and distinct criminal convictions." A.R. 690. The Government requested that the BIA "remand this matter to the Immigration Court so that it may reopen and terminate the

---

[1] During this time period, the Government issued an NTA, dated November 16, 2006, charging Duhaney as removable based on his 1985 drug trafficking, manslaughter, and firearms convictions. A.R. 683-84. This NTA was later dismissed as "improvidently issued." A.R. 618.

4

aforementioned Removal Proceedings . . . and rescind the aforementioned Order of Removal." Id. The Government's motion also included the following caveat: "all of the foregoing without prejudice against the initiation of any new removal proceedings, so that DHS-ICE may prepare and file a new NTA against the Respondent." Id.

Duhaney claims that he did not receive the Government's motion. Throughout this time period, Duhaney was in the Government's custody. On November 17, 2006, the Government transferred Duhaney from a detention facility in New York to a correctional center in Pennsylvania. Duhaney's motion included a cover letter listing his address as the Pennsylvania facility, A.R. 695, but the BIA's filing receipt lists his address as the New York facility, A.R. 693. The Government served its motion by sending it via first class mail to the New York facility. A.R. 690.

On January 17, 2007, the BIA granted the parties' motions to reopen and remanded the matter to the Immigration Court for further proceedings. A.R. 617. On March 6, 2007, the Government filed a Form I-261, lodging additional charges of removability against Duhaney (the "2007 Form").[2] A.R. 600-01. Specifically, the 2007 Form charged Duhaney with removability pursuant to: INA section 237(a)(2)(C), 8 U.S.C. § 1227(a)(2)(C), based on his conviction for a firearms offense; INA section 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii), based on his convictions for two crimes of moral turpitude; and INA section 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), based on his conviction for an aggravated felony. A.R. 600. The 2007 Form detailed his 1985 manslaughter, firearms possession, and sale of a controlled substance convictions; reported that his 2000 conviction had been vacated; and acknowledged that he had been granted a §

---

[2] We refer to the Form I-261 itself as the "2007 Form," and we refer to this form together with the 2004 NTA that it supplemented as the "Amended 2004 NTA." The 2007 Form, on its own, does not constitute a separate charging document. It merely adds factual allegations and charges of removability to the 2004 NTA.

5

212(c) waiver based on an application that listed all three 1985 convictions. A.R. 600-01.

In response, Duhaney filed a motion to terminate the removal proceedings. A.R. 503-09. Duhaney argued, inter alia, that DHS failed to provide him notice of its motion to reopen, that the BIA erred by remanding the case to the IJ rather than simply terminating the removal proceedings, and that the Government was barred by collateral estoppel and res judicata from charging grounds of removability that it could have charged during the prior proceedings that were closed in 1993 and 2005. A.R. 504-08.

On November 5, 2007, the IJ denied Duhaney's motion to terminate. A.R. 444-52. The IJ noted that collateral estoppel and res judicata apply generally to immigration proceedings, but that neither doctrine precluded DHS from alleging new grounds for removability in this case. A.R. 449. The IJ concluded that "[u]nder the INA as it was applied when [Duhaney] was granted a waiver under section 212(c) . . . , the former INS could not have charged [him] with removal as an alien convicted of an aggravated felony," because the aggravated felony provisions of the Immigration Act of 1990 did not apply retroactively until the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 was enacted. A.R. 450. Based on this "material intervening change in the governing law," the IJ found that "neither res judicata nor collateral estoppel would bar DHS's prosecution of removal proceedings based on his 1985 weapon conviction." A.R. 451. The IJ also determined that Duhaney's § 212(c) waiver applied only to the basis for removability alleged at that time, and not to a basis for removability – Duhaney's conviction of an aggravated felony – that did not even exist at the time. A.R. 451.

On December 20, 2007, the IJ ordered Duhaney removed to Jamaica based on the three grounds added by the 2007 Form. A.R. 58-63. Duhaney appealed the IJ's decision, A.R. 9-29, and on April 22, 2008, the BIA affirmed the removal order, A.R. 2-6. The BIA rejected Duhaney's arguments that it erred by remanding the case to the IJ, that Duhaney's due process rights were violated by his failure to receive notice of the Government's motion, and that collateral estoppel and res judicata barred the Government from adding charges that it could have charged before. A.R. 4-5. On

6

May 7, 2008, Duhaney filed this timely petition for review.

## II.

We have jurisdiction over this petition under 8 U.S.C. § 1252(a)(1). Since Duhaney was found removable based on his conviction for an aggravated felony, we review only the legal and constitutional issues raised. 8 U.S.C. §§ 1252(a)(2)(C)-(D); see Caroleo v. Gonzales, 476 F.3d 158, 162 (3d Cir. 2007) ("We have jurisdiction to review constitutional claims or questions of law raised upon a petition for review from a final order of the BIA . . . ."). We exercise de novo review over these issues. See Caroleo, 476 F.3d at 162 (citing Kamara v. Att'y Gen., 420 F.3d 202, 211 (3d Cir. 2005)).

## III.

As a threshold matter, Duhaney argues that the BIA erred by remanding his case to the IJ rather than simply reopening the proceedings for the sole purpose of terminating the order of removal. He argues that the BIA disregarded its own established precedent by remanding the case, and that he was deprived of the right to oppose remand because the Government failed to provide proper notice.

## A.

Duhaney first contends that the BIA erred by remanding rather than terminating his case upon the vacatur of his conviction, relying on Johnson v. Ashcroft, 378 F.3d 164, 171 (2d Cir. 2004) ("Johnson (2d Cir.)"). In that case, the Court of Appeals for the Second Circuit noted that the "BIA, as a matter of practice, routinely reopens and terminates proceedings of this kind without remanding for further inquiry before an IJ." Id. (citing In re Rodriguez-Ruiz, 22 I. & N. Dec. 1378, 1380 (BIA 2000); In re Gutnick, 13 I. & N. Dec. 672, 674 (BIA 1971)). The court also noted that, since the Government did not intend to introduce any previously unavailable evidence on remand, "the Board's own precedents clearly mandated" that the Government's motion to remand be denied. Id. (citing Kuang-Te Wang v. Ashcroft, 260

F.3d 448, 451 & n.2 (5th Cir. 2001); In re Coelho, 20 I. & N. Dec. 464, 471-73 (BIA 1992)). The court concluded that, "[w]hile the Board is free to modify its precedents in a reasoned fashion, it acts arbitrarily and unlawfully when it simply ignores established holdings." Id. at 171 (citing Ke Zhen Zhao v. U.S. Dep't of Justice, 265 F.3d 83, 93 (2d Cir. 2001); Johnson v. Ashcroft, 286 F.3d 696, 700 & n.4 (3d Cir. 2002) ("Johnson (3d Cir.)")).

We have recognized that an administrative agency "acts arbitrarily if it departs from its established precedents without announcing a principled reason for the departure." Johnson (3d Cir.), 286 F.3d at 700 (citations and quotation marks omitted). We disagree, however, that the BIA disregarded established precedent by remanding these proceedings to the IJ. We do not view any of the cases cited in Johnson (2d Cir.) as establishing that the BIA's established precedent is to terminate removal proceedings without remand to the IJ. While the BIA terminated removal proceedings without first remanding to an IJ in both Rodriguez-Ruiz, 22 I. & N. Dec. at 1380, and Gutnick, 13 I. & N. Dec. at 674, these two examples do not prove that this procedure amounts to the BIA's established precedent.

If anything, the applicable regulations seem to contemplate the procedure that the BIA followed in this case. Under 8 C.F.R. § 1003.1(d)(3)(iv), the BIA generally "will not engage in factfinding in the course of deciding appeals." If "factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge . . . ." Id. In Coelho, the BIA discussed the requirements for a motion to remand, explaining that such motions are "not expressly addressed" by the INA but have become "an accepted part" of the agency's procedure. 20 I. & N. Dec. at 471. When a motion to remand also requires reopening closed proceedings, the motion must comply with the requirements for a motion to reopen. Id. Accordingly, remand is generally only appropriate for "consideration of new facts or changed circumstances." Wang, 260 F.3d at 451. Coelho and Wang merely recognize that remand is generally inappropriate without new factual circumstances.

In this case, the vacatur of Duhaney's 2000 conviction

8

presented the BIA with new facts to consider, allowing it to grant the parties' motions to reopen and to remand to the IJ to evaluate the impact of these new facts. Once the BIA had remanded the case to the IJ, BIA precedent authorized the IJ to consider "any and all matters" that the IJ "deem[ed] appropriate in the exercise of his administrative discretion." In re Patel, 16 I. & N. Dec. 600, 601 (BIA 1978). Under these circumstances, the BIA did not disregard its established precedent by remanding the case in a way that ultimately permitted the Government to lodge additional charges of removability against Duhaney. Accordingly, the BIA did not err in ordering a remand.

B.

Duhaney also argues that the Government failed to provide notice of its motion to reopen, which it sent to a detention facility in New York after he had been transferred to a correctional center in Pennsylvania. In particular, he claims that he was deprived of the opportunity to make arguments on his own behalf and that he suffered prejudice as a result, in violation of his right to due process. See Fadiga v. Att'y Gen., 488 F.3d 142, 155 (3d Cir. 2007) ("Where an alien claims a denial of due process because he was prevented from making his case to the BIA or the IJ, he must show (1) that he was prevented from reasonably presenting his case and (2) that substantial prejudice resulted." (quotation marks, citation, and footnote omitted)). We disagree with Duhaney's claim.

Both parties filed motions to reopen the proceedings based on the vacatur of Duhaney's 2000 conviction. A.R. 689-90 (Government's motion), 698-706 (Duhaney's motion). Without hearing any additional arguments from either party, the BIA granted the relief sought by both parties. A.R. 617 (granting motion to reopen because "[t]he respondent and the Department of Homeland Security, in separate motions, ask that we reopen proceedings on the grounds that the criminal conviction underlying the respondent's removal order has been vacated"). Again, both parties sought and received identical relief. We reject Duhaney's argument that he suffered any type of prejudice under these circumstances. Accordingly, the BIA did not deprive Duhaney of

9

his due process rights.

## IV.

Having addressed Duhaney's argument that the BIA committed procedural error, we turn to his substantive challenges to the removal order. His principal claim is that res judicata precluded the Government from adding additional charges to the 2004 NTA based on convictions that it could have used to support charges of removability during prior immigration proceedings. Duhaney argues that two separate proceedings should have preclusive effect: (1) the original proceedings, based on the 1986 OTSC, which terminated with the grant of a § 212(c) waiver; and (2) the 2004 proceedings, which he argues should have been terminated when his 2000 conviction was vacated. Since we have determined that the BIA did not err by remanding the proceedings in a way that permitted the Government to lodge additional charges of removability, only the first proceeding achieved the finality necessary to invoke res judicata.[3] We hold that the Government was not precluded from alleging new charges of removability following the vacatur of Duhaney's 2000 conviction.

## A.

Res judicata, also known as claim preclusion, bars a party from initiating a second suit against the same adversary based on the same "cause of action" as the first suit. See In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008). A party seeking to invoke res judicata must establish three elements: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." Id. (quotation marks omitted). "The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." Id.

---

[3] We note, however, that under the analysis we apply to the original proceedings, res judicata would not have barred the Government from filing a new NTA based on the charges lodged in the 2004 Form had the BIA merely terminated the proceedings.

Although the doctrine of res judicata is most frequently applied to final judgments issued by courts, we have also endorsed its application to adjudicative determinations by administrative agencies, including certain immigration decisions. The Supreme Court has instructed that the "common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims)" should be applied "to those determinations of administrative bodies that have attained finality." Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991). "'When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.'" Id. (quoting United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966)). Since the common law principles of collateral estoppel and res judicata are "well established," courts may imply that "Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." Id. at 108 (quotation marks omitted).

Applying this framework, we have held that common law preclusion doctrines apply to adjudicative agency determinations under the INA, as long as application of these doctrines "does not frustrate congressional intent or impede the effective functioning of the agency." Duvall v. Att'y Gen., 436 F.3d 382, 387-88 (3d Cir. 2006). In Duvall, we explained that these preclusion doctrines apply to "all proceedings that may be deemed 'adjudicative,' no matter whether the governing entity is a 'court' or an 'agency.'" Id. at 390. We further explained that "[t]he adversarial system of dispute resolution established in the INA is plainly adjudicatory in character and susceptible to full application of common law principles of preclusion." Id. Since "[r]equiring the INS to meet its burden of proof at a single hearing is consistent with the statutory scheme, as interpreted by the administrative agency, and will not frustrate the goals of Congress," the "'lenient presumption in favor of administrative estoppel' holds, and the INA will be held to incorporate common law principles of collateral estoppel." Id. (citing In re Federenko, 19 I. & N. Dec. 57, 61 (BIA 1984) and quoting Astoria, 501 U.S. at 108).

11

The parties in this case do not dispute the general proposition that res judicata may be applied to adjudicative proceedings under the INA.[4] The question is whether res judicata precluded the Government from lodging new charges of removability under these particular circumstances. As previously noted, res judicata only applies to a second proceeding based on the same "cause of action" as the first. The challenge in this case, as in many res judicata cases, is defining the relevant "cause of action."

We have disavowed attempts to create a "simple test" for "determining what constitutes a cause of action for res judicata purposes." Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991) (quotation marks omitted). "Rather, we look toward the 'essential similarity of the underlying events giving rise to the various legal claims.'" Id. (quoting Davis v. U.S. Steel Supply, 688 F.2d 166, 171 (3d Cir. 1982) (en banc)). Our approach reflects the "'present trend . . . of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.'" Id. (quoting United States v. Athlone Indus., Inc., 46 F.2d 977, 984 (3d Cir. 1984)). Under this transactional approach, the focus of the inquiry is "'whether the

---

[4] Although this general principle appears well settled, at least one court of appeals has expressed the possibility that res judicata may not apply in the specific context of efforts to remove aliens convicted of aggravated felonies. See Channer v. DHS, 527 F.3d 275, 280 n.4 (2d Cir. 2008). The court in Channer explained that "a doctrine of repose should not be applied so as to frustrate clearly expressed congressional intent," and that Congress has "repeatedly and unambiguously . . . sought to remove . . . aliens convicted of aggravated felonies." Id. The court therefore suggested that the removal of aliens who have committed aggravated felonies may be a special case: "It may be that when DHS attempts to remove aliens convicted of aggravated felonies -- as opposed to aliens falling into some other category making them removable -- the determination of whether res judicata applies changes, given Congress' clear and emphatic position with respect to such aliens." Id.

12

acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same.'" Id. (quoting Athlone, 746 F.2d at 984). "A mere difference in theory is not dispositive." Id.

Duhaney proposes that the relevant "'transaction' for res judicata purposes in removal proceedings is the alien's removability." Duhaney Br. 21. He contends that "[w]ether the alien is removable on the basis of criminal offenses is essentially a single transaction: certainly, the issue of an alien's removability on the basis of multiple convictions form a convenient trial unit and conforms to the parties' expectations." Id. The Government proposes that in the removal context, the relevant transaction should be defined as the "factual occurrence or conviction upon which a charge of removability is based." Att'y Gen. Br. 34.

We conclude that the Government's approach to defining the relevant cause of action is more faithful to our res judicata precedent and the equitable principles underlying the doctrine, to say nothing of congressional intent. In this case, the Government secured a removal order against Duhaney based on criminal convictions for which it had not previously charged Duhaney as removable. Although there are common elements of fact between the two removal proceedings, the critical acts and the necessary documentation were different for the two proceedings. Accordingly, we hold that the doctrine of res judicata did not bar the Government from lodging additional charges of removability after Duhaney's 2000 conviction was vacated.

The Court of Appeals for the Second Circuit has applied a similar transactional approach to defining the relevant cause of action. Channer v. DHS, 527 F.3d 275, 281-82 (2d Cir. 2008). In Channer, the petitioner was convicted of state and federal crimes arising out of two separate incidents: a federal charge of carrying a firearm during a drug trafficking crime and state charges of robbery in the first degree and conspiracy to commit robbery. The INS initially charged him as removable based solely on the federal conviction, which it contended amounted to both an aggravated felony and a removable firearms offense under the INA. After an

IJ had entered an order of removal, however, the petitioner's federal conviction was vacated, and, based on the INS's motion, his removal was terminated. The INS then initiated new removal proceedings against him, charging him as removable based on his state convictions, which amounted to aggravated felonies under the INA. The petitioner argued that this second proceeding was barred by res judicata, but the BIA and the Court of Appeals for the Second Circuit held that the second proceeding involved a different "cause of action" from the first. Id. at 278, 281-82. The court in Channer reasoned that the two proceedings "did not originate from the same nucleus of operative fact. The factual predicates produced two distinct convictions based on different charges." Id. at 281. The court continued that "[w]hile the remedy for each claim is identical -- deportation for committing an aggravated felony -- the contrasting evidence required to prove each claim and the different elements of each crime demonstrate that they do not form a convenient trial unit." Id. The court rejected Channer's claim that res judicata should apply because "the facts essential to the second suit existed and were known to the complaining party at the time of the first," reasoning that "each deportation proceeding stemmed from a separate transaction" and "each required different proof." Id. The court concluded that res judicata did not bar the Government from lodging new charges of removability based on a different predicate conviction.

In Bravo-Pedroza v. Gonzales, 475 F.3d 1358 (9th Cir. 2007), by contrast, the Court of Appeals for the Ninth Circuit determined that "elementary fairness" required the opposite result. Id. at 1360. In that case, the Government first sought to deport Bravo-Pedroza based on a 1985 conviction for robbery and a 1986 conviction for burglary. The IJ found him deportable but granted him relief under former INA § 212(c), 8 U.S.C. § 1182(c) (1990). Bravo-Pedrazo, 475 F.3d at 1359. The Government sought to deport him for a second time in 2001, based on a 1996 conviction for petty theft that, due to his prior offenses, amounted to an aggravated felony. Id. The IJ found Bravo-Pedroza removable, but while his petition for review was pending, the Court of Appeals for the Ninth Circuit held that petty theft did not amount to an aggravated felony; it therefore remanded Bravo's petition to the BIA. Id. A few days later, the Government filed new charges of

14

removability against him, alleging that his three prior convictions were crimes of moral turpitude. Id. The IJ upheld the charges, but the Court of Appeals granted Bravo-Pedroza's petition for review, concluding that res judicata barred the Government from relitigating Bravo-Pedroza's removability based on these three prior convictions. Id. at 1359-60. The court held that the Government was barred by res judicata from "initiating a second deportation case on the basis of a charge that [it] could have brought in the first case, when, due to a change of law that occurred during the course of the first case, [it] lost the first case." Id. at 1358. The court rejected the Government's argument that res judicata should be applied "flexibly" in this context, explaining that the agency's own regulations provided an opportunity to add charges "during the pendency of immigration proceedings," but not after a proceeding had concluded. Id. at 1359-60 (emphasis in original). The Government had "abundant opportunity" to add these charges to the prior proceedings, the court determined, and having neglected this opportunity, it could not "avoid the application of the general principles of res judicata." Id. at 1360.

The court concluded that "elementary fairness" supported the petitioner's res judicata defense, but it did not address whether the second proceedings involved the same cause of action as the first. We are not persuaded that principles of fairness necessarily support application of res judicata in the circumstances present herein. In any event, we see no reason to depart from our standard res judicata analysis, including the transactional approach to defining the relevant cause of action.

Duhaney argues that we should not consider the predicate conviction to be the relevant factual transaction because the facts underlying a conviction may not generally be litigated in removal proceedings. See Duhaney Br. 21 n.5 (arguing that under the "formal categorical approach," the "underlying facts of the criminal convictions generally may not be litigated" (citing Evanson v. Att'y Gen., 550 F.3d 284, 290 (3d Cir. 2008)). Although an IJ's ability to look beyond the elements of the crime charged may be limited, the emphasis of the IJ's analysis remains whether a particular conviction amounts to a removable offense. We conclude that the most reasonable definition of the relevant transaction is the factual

15

occurrence giving rise to a charge of removability. See Channer, 527 F.3d at 281 ("While the remedy for each claim is identical -- deportation for committing an aggravated felony -- the contrasting evidence required to prove each claim and the different elements of each crime demonstrate that they do not form a convenient trial unit"). In this case, the relevant factual occurrence is the conviction or convictions giving rise to a charge of removability. Since the instant removal order was based on an aggravated felony conviction arising from criminal conduct that the Government had not previously charged as a ground for removal, these new charges represent a new "cause of action."

Our precedent in other, related areas supports this conclusion. In a case where we rejected an alien's attempt to invoke judicial estoppel to block the Government from lodging additional charges of removability, we explained that "'there is no requirement that the [DHS] advance every conceivable basis for [removability] in the [Notice to Appear] . . . . [S]uch a rule would needlessly complicate proceedings in the vast majority of cases.'" Yong Wong Park v. Att'y Gen., 472 F.3d 66, 73 (3d Cir. 2006) (quoting De Faria v. INS, 13 F.3d 422, 424 (1st Cir. 1993) (modifications in Park)).

We adopted a similarly pragmatic view of the Government's immigration charging discretion in Duvall. Despite our general conclusion that the doctrine of collateral estoppel applied to immigration proceedings, we ultimately concluded that the Government was not precluded from relitigating the issue of the petitioner's alienage, even though that issue technically had been adjudicated on the merits in the first proceeding. In the initial deportation proceedings, the Government -- through an oversight the court characterized as a mere "litigation error" -- failed to produce proof of the petitioner's foreign citizenship. Duvall, 436 F.3d at 384. After these initial deportation proceedings were terminated in the petitioner's favor, she went on to commit several additional crimes. When the Government sought to remove her based on these subsequent convictions, she attempted to invoke collateral estoppel to bar the Government from relitigating the issue of her alienage. We held that collateral estoppel did not bar the Government from relitigating this issue under these circumstances,

reasoning that "collateral estoppel was borne of equity and is therefore 'flexible,' bending to satisfy its underlying purpose in light of the nature of the proceedings." Id. at 390-91 (quoting Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 288 F.3d 519, 528 (3d Cir. 2002)).

The case for applying equitable preclusion doctrines flexibly is particularly strong in the circumstances presented by Duhaney's petition. As we explained in Duvall, Congress has repeatedly amended the immigration laws to facilitate the removal of aliens who have been convicted of aggravated felonies. 436 F.3d at 391 (noting that a "primary goal of several recent overhauls of the INA has been to ensure and expedite the removal of aliens convicted of serious crimes" (citations omitted)); see also Channer, 527 F.3d at 280 n.4 (observing that Congress has "repeatedly and unambiguously" sought to remove aliens convicted of aggravated felonies). "[A] doctrine of repose should not be applied so as to frustrate clearly expressed congressional intent." Channer, 527 F.3d at 280 n.4. The fact that Congress has specifically chosen to amend the immigration laws to facilitate the removal of aliens who have committed aggravated felonies counsels against an overly rigid application of the res judicata doctrine.

In this case, the order of removal against Duhaney is based on a ground of removability that did not even become available until after Duhaney was granted a § 212(c) waiver. The BIA found him removable under INA section 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony as defined in INA section 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F). INA section 101(a)(43)(F) defines aggravated felony as a crime of violence for which the term of imprisonment is at least one year. This definition of aggravated felony was not created until after 1985, however, and Congress did not provide for the retroactive application of the definition until it passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009. IIRIRA section 321(b) amended INA section 101(a)(43) to apply the definition of aggravated felony "regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph." 110 Stat. at 3009-628 (codified at 8 U.S.C. §

17

1101(a)(43)).

When the original immigration proceedings terminated with the grant of a § 212(c) waiver in 1993, three years before IIRIRA was passed, the Government could not have charged Duhaney with removability based on this ground. Other courts of appeals have held that res judicata does not bar the Government from lodging new charges of removability, post-IIRIRA, that could not have been raised pre-IIRIRA. See, e.g., Ljutica v. Holder, 588 F.3d 119, 127 (2d Cir. 2009) ("Under the principles of res judicata, while a previous judgment may preclude litigation of claims that arose prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." (quotation marks omitted)); Alvear-Velez v. Mukasey, 540 F.3d 672, 678 (7th Cir. 2008) ("[A]lthough changes in case law almost never provide a justification for instituting a new action arising from the same dispute that already has been litigated to a final judgment, statutory changes that occur after the previous litigation has concluded may justify a new action.").

Since we have determined that the instant order of removal is based on a different "cause of action" than the earlier proceedings against Duhaney, we need not resolve whether the enactment of new statutory grounds of removal would render res judicata inapplicable. Neither must we address Duhaney's contention that the Government could have used his 1985 firearm and manslaughter convictions to support other potential grounds of removal. Under the circumstances presented by this case, res judicata does not bar the Government from lodging new charges of removability based on convictions that it had not previously raised.[5]

---

[5] Duhaney also argues that the Government's attempts to initiate new removal proceedings against him based on charges that it could have brought in earlier proceedings violate due process. Without some procedural bar to limit the Government from bringing successive actions, Duhaney argues, it "could simply institute repeated administrative proceedings, imposing more and more expense on its target, until it achieved its desired result." Duhaney Br. 47. The doctrines of res judicata and procedural

18

B.

Duhaney contends that the regulations governing § 212(c) waivers support his position that the Government was precluded from lodging new charges of removal based on convictions disclosed in his application for § 212(c) relief. The Government contends that this argument was waived because it was not specifically raised before the IJ and the BIA. Duhaney contends that this specific issue falls within his broader claim that the Government was precluded from relitigating claims that it could have brought during earlier proceedings. Assuming, arguendo, that Duhaney has properly exhausted this issue, we conclude that his § 212(c) waiver does not apply to the instant order of removal, which is based on a different ground of removability.

A § 212(c) waiver extends only to the "specific grounds of excludability or deportability that were described in the application." 8 C.F.R. § 212.3(d). The sole charge in the 1986 OTSC was based on his 1985 controlled substance conviction, making him deportable under former INA section 242(a)(11), 8 U.S.C. § 1231(a)(1) (1986). A.R. 910. It did not raise any other grounds for deportability. Duhaney's application for the § 212(c) waiver disclosed his other convictions, A.R. 906, and the IJ discussed these convictions in the hearing on Duhaney's request for the waiver, see A.R. 369-70, but the disclosure and discussion of these convictions does not somehow bring every possible ground for deportation that could have been based on the convictions within the scope of the waiver.

The BIA has explained that a § 212(c) waiver "should

estoppel, as well as the BIA's own procedures, however, impose significant limits on the Government's ability to bring successive removal actions. These doctrines and procedures impose principled limits on the Government's ability to revisit claims and issues that have already been fully litigated, even if these doctrines do not bar the Government from lodging new charges of removability in this particular case. Duhaney's due process challenge therefore lacks merit.

remain valid indefinitely," but only as to specific "grounds stated at the time of the grant of relief." In re Balderas, 20 I. & N. Dec. 389, 393 (BIA 1991). In Balderas, the BIA further explained that "since a grant of section 212(c) relief 'waives' the finding of excludability itself, the crimes alleged to be grounds for excludability or deportability do not disappear from the alien's record for immigration purposes." Id. at 391. "[W]hen section 212(c) relief is granted, the Attorney General does not issue a pardon or expungement of the conviction itself. Instead, the Attorney General grants the alien relief upon a determination that a favorable exercise of discretion is warranted on the particular facts presented, notwithstanding the alien's excludability or deportability." Id. (footnote omitted).

The facts of Balderas help illuminate this distinction. The INS first sought to deport Balderas based on two convictions, under the former INA section 241(a)(4)(A), which applied to an alien convicted of two crimes involving moral turpitude. Balderas received a § 212(c) waiver, but he was later convicted of another crime involving moral turpitude. The INS then sought to deport Balderas a second time, based on one of the pre-waiver convictions and the post-waiver conviction, under the same "two crimes involving turpitude" provision. The BIA concluded that Balderas' § 212(c) waiver did not apply to this new basis for deportability, holding that:

> a conviction which has once been relied upon in a charge of deportability may be alleged as one of the 'two crimes involving moral turpitude' in a second proceeding, even though the first proceeding was terminated by a grant of relief under section 212(c) of the Act, where the second crime alleged is a subsequent conviction that was not disclosed in the prior proceeding.

Id. at 393.

Although Balderas involved an alien who committed another crime after obtaining a § 212(c) waiver, the second proceeding relied both on the post-waiver conviction and one of the

20

pre-waiver convictions. This fact illustrates that the scope of a § 212(c) waiver is defined by the basis for deportability, not the underlying crime itself. See Esquivel v. Mukasey, 543 F.3d 919, 922 (7th Cir. 2008) ("The BIA has established that a § 212(c) waiver does not waive the basis for excludability itself; it merely waives the finding of excludability." (emphasis in original)). Indeed, we have determined, relying on Balderas, that the fact that a petitioner's deportation based on a particular conviction has been waived does not prevent subsequent consideration of the same underlying conviction for other purposes. Rodriguez-Munoz v. Gonzales, 419 F.3d 245, 248 (3d Cir. 2005) ("[E]ven if Rodriguez-Munoz's deportation based on his 1992 conviction were waived under § 212(c), that conviction would nonetheless remain an aggravated felony for purposes of precluding his application for cancellation of removal under § 240A."); see also De Hoyos v. Mukasey, 551 F.3d 339, 342-43 (5th Cir. 2008) (agreeing with the BIA's approach in Balderas); Esquivel, 543 F.3d at 922-23 (same).

Duhaney obtained discretionary relief that allowed him to remain in the country even though he was found to be deportable based on his 1985 conviction for sale of a controlled substance. This § 212(c) waiver remains valid indefinitely, but it applies only to the basis for deportation charged in the 1986 OTSC. Under the applicable regulations, the Government was permitted to lodge new charges of removability, even based on convictions that were disclosed in his application. Duhaney's § 212(c) waiver does not extend to the ground for removability that underlies the instant order of removal.

V.

For the foregoing reasons, we will deny the petition for review.

21