**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1828
_____

RENE OMAR MENDOZA REYEZ,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of a Decision of the
United States Department of Justice
Board of Immigration Appeals
(BIA-1: A097-701-910)

_____

Submitted Under Third Circuit LAR 34.1(a)
March 19, 2019

Before: SHWARTZ, KRAUSE, and BIBAS, *Circuit Judges*

(Opinion filed: April 11, 2019)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Rene Omar Mendoza Reyez, an alien from Honduras, petitions for review of an order by the Board of Immigration Appeals (BIA) affirming the rejection of his applications for withholding of removal and protection under the Convention Against Torture (CAT). We will deny the petition.

## I. Background

Mendoza was arrested after unlawfully reentering the United States, and the Department of Homeland Security reinstated a prior removal order against him. In the course of removal proceedings, Mendoza applied for withholding of removal and CAT protection, claiming that, as a former MS-13 gang member who has repudiated ties to the gang, he faces a risk that current MS-13 members would kill him upon return to Honduras because the gang does not tolerate desertion. He further asserted that rival gangs and state actors might harm him under the mistaken belief that he still belongs to MS-13 because he bears partially removed MS-13 tattoos. The Immigration Judge (IJ) denied his application, and the BIA affirmed. This appeal followed.

## II. Jurisdiction and Standard of Review

This Court has jurisdiction over Mendoza's petition for review pursuant to 8 U.S.C. § 1252(a). We review legal and constitutional issues de novo*, see Duhaney v. Att'y Gen.*, 621 F.3d 340, 345 (3d Cir. 2010), and we will uphold factual findings if they are supported by "substantial evidence," *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 340 (3d Cir. 2008); *see also* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the

2

contrary[.]"). Where the BIA issues its own opinion on the merits, we review the BIA's decision; however, where, as here, the BIA adopts reasoning of the IJ's opinion, we review both the IJ and BIA decisions. *See Zhi Fei Liao v. Att'y Gen.*, 910 F.3d 714, 718 (3d Cir. 2018).

## III. Discussion

On appeal, Mendoza challenges the denial of both his withholding-of-removal application and his CAT-protection application. He also posits that the use of video-conferencing in his proceedings before the IJ violated his due process rights. We address each argument in turn.

### A. Withholding of Removal

In removal proceedings, Mendoza contended he was entitled to withholding of removal because he would face persecution on two protected grounds: (1) membership in a Particular Social Group (PSG)[1]—"Honduran[] men who repudiated ties with the MS-13 [gang] and attempted to at least partially remove their gang tattoos," or alternatively, "Hondurans who repudiated ties with the MS-13 [gang]," A.R. 229—and (2) his "anti-gang political opinion," as manifested in his attempts to remove his gang tattoos, A.R. 227. On appeal, Mendoza challenges the IJ's and BIA's denial of relief on each of these grounds, and we address them in turn.

---

[1] One protected ground that may serve as a basis for withholding-of-removal relief is "membership in a particular social group," 8 U.S.C. § 1231(b)(3)(A), which is a group that is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 540, 547 (3d Cir. 2018) (citation omitted).

*1. Membership in a PSG*

To demonstrate entitlement to withholding of removal based on membership in a PSG, an alien must establish, among other things, "that it is more likely than not[] that [he] would suffer persecution upon returning home," *S.E.R.L.*, 894 F.3d at 544—which he might establish either through evidence that future persecution is likely or through evidence of past persecution, *see* 8 C.F.R. § 1208.16(b)(1)—and "a nexus, or causal link, between the persecution and membership in [his] particular social group." *S.E.R.L.*, 894 F.3d at 544. The IJ found that Mendoza failed to establish past persecution and that, to the extent he had shown a likelihood of future harm, he failed to establish a nexus between that harm and his membership in his asserted PSG. The BIA affirmed both determinations, and we conclude that they are supported by substantial evidence.

As to past persecution, only "grave harms" qualify, such as "threats to life, confinement, torture, [or] economic restrictions so severe that they constitute a threat to life or freedom." *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684 (3d Cir. 2015) (citation omitted). On appeal, Mendoza emphasizes that he was "followed and had to move several times while living in hiding" after leaving MS-13. Petitioner's Br. 20. But being followed and moving do not meet the high standard for "grave harm," *Gonzalez-Posadas*, 781 F.3d at 684, and the record does not reflect any other harm that Mendoza personally suffered after quitting MS-13.

While Mendoza did testify to harm that his family endured in the past, including that his "father was threatened [by MS-13] many times," A.R. 152, and that his mother and siblings were victims of gang violence, the letters submitted by his family, as both

4

the IJ and BIA noted, did not attribute any harm they suffered to their relationship with Mendoza or his repudiated gang membership; in fact, the letters did not even mention that Mendoza belonged to a gang.[2]  Without a connection to Mendoza, such harms do not suffice.  *See Sioe Tjen Wong v. Att'y Gen.*, 539 F.3d 225, 236 (3d Cir. 2008), *abrogated on other grounds by Nbaye v. Att'y Gen.*, 665 F.3d 57, 59–60 (3d Cir. 2011).  In short, substantial evidence supports the BIA's finding that Mendoza did not suffer past persecution.  *See Gomez-Zuluaga*, 527 F.3d at 340; 8 U.S.C. § 1252(b)(4)(B).

The BIA also found that Mendoza failed to establish a nexus between any future harm he might suffer and his proposed PSGs, which is a finding of fact that we review for substantial evidence.  *See Shehu v. Att'y Gen.*, 482 F.3d 652, 657 (3d Cir. 2007); *see also Thuri v. Ashcroft*, 380 F.3d 788, 791 (5th Cir. 2004).  Here too, substantial evidence supports the BIA's determination.  For example, Mendoza was deported to Honduras in 2006 and remained there for approximately six months before returning to the U.S., but during that period, MS-13 apparently neither harmed nor threatened to harm him.  That suggests, as the IJ observed, that Mendoza was not being specifically targeted by MS-13 as an ex-member.  What Mendoza's evidence does show is the potential for future harm in Honduras related more generally to high levels of crime and violence in the country, including that experienced by his family members whose letters recounted robberies and

---

[2] Mendoza contends he is entitled to a remand for his relatives to testify and expound upon their letters, but Mendoza already had the opportunity to introduce whatever testimony he would use to support his applications, *see* 8 U.S.C. § 1229a(b)(4)(B), and he cites no authority to support his contention that he is entitled to a second chance to provide evidence previously available.

5

kidnappings not specifically tied to Mendoza's former membership in MS-13.  While he also submitted evidence that some former gang members in Honduras face the prospect of reprisal from their ex-confederates for abandoning the gang, Mendoza did not establish that all or even most former gang members share that fate.  We therefore perceive no error in the BIA's determination that Mendoza failed to satisfy the nexus requirement.

In sum, having failed to establish either past persecution or a likelihood of future persecution based on his membership in the proposed PSG, Mendoza was not entitled to withholding of removal on that ground.[3]

### 2. *Political Opinion*

As with his claim for withholding of removal based on membership in a PSG, to establish his claim for withholding of removal based on anti-gang political opinions, Mendoza was required to show both a likelihood of future persecution and a nexus between any persecution he might suffer and the protected ground—his political opinion. *See Long Hao Li v. Att'y Gen.*, 633 F.3d 136, 141 (3d Cir. 2011).  The BIA and IJ found, among other bases to deny relief, that Mendoza failed to establish the requisite nexus,[4] and, again, the record provides substantial evidence supporting that determination:  By Mendoza's own account, insofar as current MS-13 members are motivated to harm him, it is because members "are not allowed to leave" under a "pact" they make with the gang,

---

[3] Because these factual findings are dispositive, we need not address Mendoza's argument that the BIA erred in concluding that his PSG was not legally cognizable.  *See Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011).

[4] Neither the BIA nor the IJ addressed likelihood of future persecution.

A.R. 147—not because of any individual political opinion he may hold. Without any evidence in the record demonstrating a nexus between Mendoza's potential future harm and his anti-gang political opinion, we will not disturb the BIA's denial of relief on that basis.[5]

## B. CAT Protection

To qualify for CAT protection, an alien must show that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." *Kamara v. Att'y Gen.*, 420 F.3d 202, 212–13 (3d Cir. 2005) (citation omitted). Here, the BIA upheld the IJ's factual finding that Mendoza was not likely to be tortured—a finding grounded in the IJ's observation that Mendoza had never been subjected to torture in the past and that Mendoza's evidence spoke merely to the prevalence of gang violence in Honduras generally.

On appeal, Mendoza largely rehashes the evidence he presented during removal proceedings, emphasizing the possibility that he might be imprisoned and tortured for having MS-13 tattoos, or the chance that MS-13 or other gangs will torture him. To prevail, however, Mendoza must persuade us that the evidence was so substantial that "any reasonable adjudicator would be compelled" to find a likelihood of torture. 8 U.S.C. § 1252(b)(4)(B). For the reasons noted by the IJ, he cannot do so on this record. Accordingly, the BIA did not err in affirming the denial of CAT relief.

---

[5] We also have no need to address Mendoza's other related arguments, such as his argument that the BIA erred by finding he did not harbor any anti-gang political opinion.

## C. Due Process

The Fifth Amendment requires that aliens in removal proceedings be given an "opportunity to be heard at a meaningful time and in a meaningful manner." *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003) (en banc) (citation omitted). Here, Mendoza does not point out any specific way in which the use of video-conferencing in his proceedings before the IJ impaired his opportunity to be heard. In the absence of any particular problem encountered while using video-conferencing technology, the mere fact of its use during removal proceedings—a practice explicitly authorized by statute, *see* 8 U.S.C. § 1229a(b)(2)(A)(iii)—does not violate due process. *See Vilchez v. Holder*, 682 F.3d 1195, 1199–1200 (9th Cir. 2012); *Rusu v. U.S. I.N.S.*, 296 F.3d 316, 323–24 (4th Cir. 2002). Mendoza's due process challenge is therefore unavailing.

## IV. Conclusion

For the aforementioned reasons, we will deny Mendoza's petition for review.

8