NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3633
_____

JOSE NOE NUNEZ-MARTINEZ,
                                        Petitioner

v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA
_____

On Petition for Review of a Decision
and Order of the Board of Immigration Appeals
(BIA-1: A099-474-935)
Immigration Judge: Kuyomars Q. Golparvar
_____

Submitted on September 9, 2020

BEFORE: CHAGARES, HARDIMAN, and MATEY, *Circuit Judges*

(Filed: September 10, 2020)

_____

OPINION[*]
_____

_____

     [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Jose Noe Nunez-Martinez petitions for review of the decision of the Board of Immigration Appeals (BIA). We will deny the petition.

I

Nunez-Martinez, a Mexican citizen, entered the United States without inspection and was subsequently removed under an expedited removal order in 2010. He illegally reentered the United States shortly afterwards. He then married a United States citizen, who filed an I-130 Petition for Alien Relative on his behalf. In early 2018, authorities arrested Nunez-Martinez, reinstated his 2010 expedited removal order, and detained him.

Nunez-Martinez requested a reasonable fear interview. At the end of the interview, an asylum officer determined Nunez-Martinez had a reasonable fear of persecution or torture and referred his case to an Immigration Judge (IJ). Appearing before the IJ, Nunez-Martinez testified he was afraid to return to Mexico because of the mistreatment he would suffer as an openly gay man. As Nunez-Martinez was statutorily ineligible for asylum, he sought only withholding of removal and protection under the Convention Against Torture (CAT).

The IJ issued an oral decision denying relief. Although he found Nunez-Martinez credible, and determined he was a member of a particular social group (homosexuals from Mexico), the IJ concluded Nunez-Martinez had not suffered past persecution. The IJ likewise concluded Nunez-Martinez failed to establish it was more likely than not he would suffer from future persecution and that he was ineligible for protection under the CAT.

2

Nunez-Martinez appealed to the BIA. The BIA dismissed his petition, agreeing with the IJ that Nunez-Martinez had not suffered from past persecution or demonstrated a clear probability that his life or freedom would be threatened if he returned to Mexico. Nunez-Martinez timely petitioned this Court for review.

## II

We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a)(1). "Where, as here, the BIA issues a written decision on the merits, we review its decision and not the decision of the IJ," *Baptiste v. Att'y Gen.*, 841 F.3d 601, 605 (3d Cir. 2016) (internal quotations omitted), and we "look to the IJ's ruling only insofar as the BIA defers to it," *Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir. 2010) (citing *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006)). We review legal issues de novo. *Duhaney v. Att'y Gen.*, 621 F.3d 340, 345 (3d Cir. 2010). But questions of past persecution, or likelihood of future persecution, are factual issues we review "under the deferential substantial evidence standard." *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Senathirajah v. INS*, 157 F.3d 210, 216 (3d Cir. 1998) (internal quotation marks and citation omitted).

## III

Nunez-Martinez argues the BIA erred in denying him withholding of removal and protection under the CAT. We are unpersuaded.

## A

Nunez-Martinez first claims we should remand his case to the BIA in light of two recent cases, *Herrera-Reyes v. Att'y Gen.*, 952 F.3d 101 (3d Cir. 2020) and *Doe v. Att'y Gen.*, 956 F.3d 135 (3d Cir. 2020). On his view, these cases "fundamentally undercut both the IJ and the BIA's" reasoning in denying him withholding of removal and require remand. Nunez-Martinez Br. 24. We disagree.

"To qualify for withholding of removal, an applicant must show a 'clear probability' that his . . . life or freedom would be threatened if he . . . is deported." *Toure v. Att'y Gen.*, 443 F.3d 310, 317 (3d Cir. 2006) (quoting *Lin v. INS*, 238 F.3d 239, 244 (3d Cir. 2001)). Under that standard, the question is "whether it is more likely than not that the alien would be subject to persecution." *Id.* (quoting *INS v. Stevic*, 467 U.S. 407, 424 (1984)). An alien who shows past persecution establishes a rebuttable presumption of fear of future persecution. *Id.*

"[P]ersecution is an extreme concept," that "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Fatin v. INS*, 12 F.3d 1233, 1243, 1240 (3d Cir. 1993) (internal quotation marks omitted). Rather, it includes only grave harms such as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Id.* at 1240.

In *Herrera-Reyes*, we synthesized our approach to determining whether an alien has a well-founded fear of future persecution. 952 F.3d at 106–09. In particular, we "dr[ew] three lessons" from our prior case law. *See id.* at 106–08 (relying on *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330 (3d Cir. 2008); *Chavarria*, 446 F.3d at 508; and *Zhen Hua Li v. Att'y Gen.*, 400 F.3d 157 (3d Cir. 2005)).

First, we clarified that "our threat cases are not an exception to the general rule of cumulative analysis but simply applications of it." *Id.* at 107. Second, in considering whether a past threat qualifies as persecution, our main considerations are "whether the threat is 'concrete' and 'menacing.'" *Id.* at 108. In holding that our "standard going forward [is] simply [whether the threat is] 'concrete and menacing,'" we stepped away from prior decisions relying on imminence. *Id.* Third and finally, we held that the "concrete and menacing" standard "is not a unique persecution standard for threat cases, but rather a term that reflects the court's ultimate determination that the cumulative effect of the threat and its corroboration presents a real threat to a petitioner's life or freedom." *Id.* (internal quotation marks, alterations, and citation omitted). Threats are concrete when they are neither abstract nor ideal and they are menacing when they show an "intention to inflict harm." *Id.* (internal quotation marks and citation omitted). Thus, we concluded, a threat constitutes past persecution when, "considered in the context of the full record[, it] poses a severe affront to the petitioner's life or freedom." *Id.* (internal quotation marks omitted) (citing *Gomez-Zuluaga*, 527 F.3d at 341).

In *Doe*, we applied *Herrera-Reyes* to the case of a Ghanaian refugee seeking asylum and withholding of removal. 956 F.3d at 138–39, 143–44. Although we

5

concluded the BIA and IJ erred in finding the Petitioner had not suffered past persecution, *id.* at 150, we also emphasized that a failure to find past persecution does not bar an applicant from receiving asylum, *id.* at 151. Rather, the applicant may "demonstrate that he has a well-founded fear of future persecution," by showing he would be "individually singled out for persecution on account of a statutorily protected ground" or that "there is a pattern or practice in his home country of persecution against a group of which he is a member." *Id.* (internal quotation marks omitted) (citing *Khan v. Att'y Gen.*, 691 F.3d 488, 496 (3d Cir. 2012)). Of course, "[t]he source of the persecution must be the government or forces that the government is unwilling or unable to control." *Id.* (internal quotation marks and citation omitted).

Nunez-Martinez faults the BIA and IJ for relying on and discussing the imminence of the threats he faced, and for relying on *Chavarria*, 446 F.3d at 508, and *Gomez-Zuluaga*, 527 F.3d at 330, without mention of *Herrera-Reyes*, 952 F.3d at 101, or *Doe*, 965 F.3d at 135. But we cannot fault the BIA for failing to rely on *Herrera-Reyes* or *Doe* when neither of those cases had been decided at the time of its adjudication. Regardless, far from overruling either *Chavarria* or *Gomez-Zuluaga*, *Herrera-Reyes* relied heavily on both of those cases in holding the operative question is whether past threats and their cumulative effects on an applicant present "a real threat to [a petitioner's] life or freedom." *Herrera-Reyes*, 952 F.3d at 108 (quotation marks, alteration, and citation omitted).

We see no error in the BIA's (and IJ's) conclusion that Nunez-Martinez did not suffer past persecution. Nunez-Martinez testified credibly that, in 2001, "after his former

6

girlfriend's family began suspecting he was a homosexual," her brothers began "threaten[ing] to beat him" and "driving by his place of work." AR 4. There was no allegation of intent to follow through on these threats, nor did the trouble follow Nunez-Martinez when he moved to Tijuana for four to six months around that time. And when Nunez-Martinez returned to Mexico in 2010, "he was not harmed or mistreated while he was there, . . . [though he] liv[ed] a closeted life." AR 53.

Because Nunez-Martinez was unable to prove past persecution, the BIA agreed with the IJ that he was unable to meet the "very heavy burden" of "demonstrat[ing] a clear probability that his life or freedom would be threatened in Mexico on account of his membership in a particular social group." AR 4, 61; *see also Doe*, 956 F.3d at 151. Our review of the record leads us to conclude that more than a "mere scintilla" of evidence supports the BIA's conclusion. *Senathirajah*, 157 F.3d at 216. Beyond the threats from his ex-girlfriend's brothers years ago, Nunez-Martinez testified to no other "harm[] or mistreat[ment]" and "the police have never targeted him and he is not afraid of the police." AR 60.

In sum, substantial evidence supports the BIA's conclusion that Nunez-Martinez did not suffer past persecution and that he failed to establish that he is more likely than not to be persecuted in the future. *See Abdille*, 242 F.3d at 483.[1]

---

[1] Because we agree Nunez-Martinez failed to establish that he is more likely than not to suffer from future persecution, we do not address his remaining arguments challenging the BIA's denial of withholding of removal.

B

Nunez-Martinez also challenges the BIA's determination that he was not entitled to CAT relief. In seeking relief under the CAT, an applicant "bears the burden of establishing that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal" by or with the government's acquiescence. *Sevoian v. Ashcroft*, 290 F.3d 166, 175 (3d Cir. 2002) (internal quotation marks and citation omitted). "Acquiescence" requires "that government officials remain willfully blind to torturous conduct and breach their legal responsibility to prevent it." *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 610 (3d Cir. 2011) (quotation marks and citation omitted).

Nunez-Martinez argues that the Board mischaracterized or improperly analyzed his claims. Not so. The BIA accurately held that Nunez-Martinez was never physically harmed—and certainly not tortured—in the past, did not suffer any harm when he returned to Mexico in 2010, and never reported any problems to the police. Substantial evidence in the record supports these conclusions. Finding no error in the BIA's and IJ's conclusion that Nunez-Martinez failed to establish that it is more likely than not he would be tortured if returned to Mexico, he was not entitled to protection under the CAT.

\*     \*     \*

We will deny Nunez-Martinez's petition for review for the reasons stated.