**06-0120-pr**
**Channer v. Homeland Security**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————

August Term, 2007

(Argued: November 30, 2007                                              Decided: May 30, 2008)

Docket No. 06-0120-pr

————

CLAUDIOUS W. CHANNER,

*Petitioner-Appellant*,

—v.—

DEPARTMENT OF HOMELAND SECURITY, INS, STRANGE, WARDEN,

*Respondents-Appellees*.

————

Before:

B.D. PARKER, WESLEY, LIVINGSTON, *Circuit Judges*.

In this petition, Claudious W. Channer contends that the principles of res judicata bar the Department of Homeland Security ("DHS") from relitigating his removal based on a claim that could have been raised in Channer's previous removal proceeding. We hold that the DHS is not barred because Petitioner's second suit does not involve the same claim or nucleus of operative fact as the first. We therefore DENY Channer's petition for review.

PETITION FOR REVIEW DENIED.

————

GEORGE G. KOUROS, Sheehan & Reeve, New Haven, CT, *for Petitioner-Appellant*.

1

SANDRA S. GLOVER, Assistant United States Attorney for the District of Connecticut (Lisa E. Perkins, *on the brief*), *for* Kevin J. O'Connor, United States Attorney for the District of Connecticut, New Haven, CT, *for Respondents-Appellees*.

_____

WESLEY, *Circuit Judge*:

Claudious W. Channer is a native and citizen of Jamaica. He entered the United States as an immigrant on December 23, 1980. On January 9, 1990, the United States District Court for the District of Connecticut convicted Channer of using and carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). *United States v. Channer*, No. 2:89CR91 (D. Conn. Jan. 9, 1990). The district court sentenced him principally to five years' incarceration. On November 29, 1990, the Hartford Superior Court convicted Channer of robbery in the first degree, in violation of Conn. Gen. Stat. § 53a-134(a)(4), and conspiracy to commit robbery, in violation of Conn. Gen. Stat. §§ 53a-48 and 53a-134. On February 21, 1991, the Hartford Superior Court sentenced him to twenty years' imprisonment to run consecutively to his federal sentence. The Connecticut Appellate Court affirmed Channer's state conviction on July 7, 1992. *State v. Channer*, 612 A.2d 95, 103 (Conn. App. Ct. 1992), *cert. denied,* 614 A.2d 826 (Conn. 1992).

On May 20, 1991, the Immigration and Naturalization Service[1] ("INS") issued Channer an Order to Show Cause ("OSC"), charging him as removable under § 241(a)(2)(C) of the Immigration and Nationality Act ("INA") for having been convicted of an offense involving the

---

[1] The INS no longer exists as an agency within the Department of Justice. After March 1, 2003, the Border and Transportation Security Directorate in the DHS assumed its duties pursuant to §§ 441 and 471 of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. This opinion refers to the INS during all proceedings before 2002 and to the DHS for proceedings after 2002.

use and carrying of a firearm as defined in 18 U.S.C. § 921(a). The INS subsequently added an additional charge in 1994 – that Channer was removable under INA § 241(a)(2)(A)(iii) because he was convicted of an aggravated felony. The INS based both the 1991 OSC and the 1994 Amendment on Channer's federal conviction.

On February 7, 1994, an Immigration Judge ("IJ") ordered Channer removed on the basis of his federal aggravated felony conviction. Channer appealed from the removal order, but then withdrew his appeal and requested immediate removal. The request to withdraw was granted, but on March 21, 1994, the INS transferred Channer to Connecticut state custody to begin serving his twenty-year state prison sentence.

On June 17, 1998, the district court vacated Channer's January 1990 federal conviction on grounds not relevant here. On August 13, 1998, the INS filed a Motion to Reopen and a Motion to Terminate Deportation Action because the district court had vacated Channer's federal conviction. On August 26, 1998, the IJ granted the INS's motions and terminated Channer's removal.

On February 4, 1999, the INS issued a new Notice to Appear asserting that Channer was removable under INA § 237(a)(2)(A)(iii)[2] based on his Connecticut felony conviction (an aggravated felony under the INA). An IJ issued an order of removal on April 16, 1999 and ordered Channer removed to England, with an alternate order of removal to Jamaica.

Channer appealed, arguing primarily that res judicata barred the second proceeding. The Board of Immigration Appeals ("BIA") dismissed the appeal on November 8, 1999, holding that the requirements of res judicata were not met because "[t]he immigration charges in [Channer's]

_____

[2] INA § 241, originally codified at 8 U.S.C. § 1251, was renumbered as INA § 237 and codified at 8 U.S.C. § 1227, prior to the commencement of Channer's removal proceedings.

two proceedings are different, based on two separate convictions in separate jurisdictions, one in federal court and one in state court."

On July 9, 2004, Channer filed a petition for a writ of habeas corpus in the United States District Court for the District of Connecticut to challenge his removal order.[3] He argued, *inter alia*, that res judicata barred the 1999 deportation order because the INS "knew or should have known of" his state conviction at the time of the first proceeding. Prior to the district court's decision, however, President Bush signed the REAL ID Act into law. The Government subsequently moved to transfer the habeas petition to this Court under § 106(c) of the REAL ID Act. On December 16, 2005, the district court denied the Government's transfer motion and Channer's habeas petition. *Channer v. Dep't of Homeland Sec.*, 406 F. Supp. 2d 204, 208-09 (D. Conn. 2005). Channer filed a notice of appeal on January 9, 2006, and was removed from the United States that same day.

On October 27, 2006, this Court entered an order granting Channer's motion for appointment of counsel and determined that the district court had improperly failed to transfer the case to this Court as a petition for review under the REAL ID Act. We directed the parties to brief the following two issues: "whether: (1) the *res judicata* issue presented by this case is a question of law over which this Court has jurisdiction under the REAL ID Act; and (2) *res judicata* applies to removal proceedings and precludes a subsequent removal proceeding, *see Johnson v. Ashcroft*, 378 F.3d 164, 172 n.10 (2d Cir. 2004)."

**DISCUSSION**

Any alien who has been convicted of an "aggravated felony" at any time after he has been

---

[3] Channer's 2004 habeas petition is his second such petition filed to challenge his 1999 removal order. His first petition, filed in 2001, was never resolved on the merits.

4

admitted to the United States is removable.  8 U.S.C. § 1227(a)(2)(A)(iii); *see also Vargas-Sarmiento v. U.S. Dep't of Justice*, 448 F.3d 159, 165 (2d Cir. 2006).  "As a rule, federal courts lack jurisdiction to review final agency orders of removal based on an alien's conviction for certain crimes, including aggravated felonies."  *Vargas-Sarmiento*, 448 F.3d at 164; *see also* 8 U.S.C. § 1252(a)(2)(C).

The REAL ID Act, however, grants Courts of Appeals jurisdiction to review an order of removal insofar as the petition for review of such an order raises "constitutional claims or questions of law."  REAL ID Act § 106(a)(1)(A)(iii) (codified at 8 U.S.C. § 1252(a)(2)(d)).  In *Xiao Ji Chen v. U.S. Dep't of Justice*, this Court explained that "constitutional claims or questions of law" "encompass the same types of issues that courts traditionally exercised in habeas review over Executive detentions."  471 F.3d 315, 326–27 (2d Cir. 2006) (internal quotation marks omitted).  The Supreme Court has stated that habeas jurisdiction "traditionally had 'encompassed detentions based on *errors of law*, including the erroneous *application or interpretation* of statutes,' as well as challenges to 'Executive interpretations of the immigration laws,' and determinations regarding an alien's 'statutory eligibility for discretionary relief.'"  *Id.* at 327 (quoting *INS v. St. Cyr*, 533 U.S. 289, 302, 307, 314 n.38 (2001)) (citations omitted).

We ultimately concluded that we "need not determine the precise outer limits of the term 'questions of law' under the REAL ID Act," but rather that it was enough

> to hold simply that, although the REAL ID Act restores our jurisdiction to review "constitutional claims or questions of law," we remain deprived of jurisdiction to review decisions under the INA when the petition for review essentially disputes the correctness of an IJ's fact-finding or the wisdom of his exercise of discretion and raises neither a constitutional claim nor a question of law.

*Id.* at 328-29 (quoting 8 U.S.C. § 1252 (a)(2)(D)).

As several of our sister Circuits have held, the application of res judicata is an issue of law that we have jurisdiction to review. *See, e.g.*, *Andrade v. Gonzales*, 459 F.3d 538, 542, 545 (5th Cir. 2006), *cert. denied*, ___ U.S. ___, 127 S. Ct. 973 (2007); *Hamdan v. Gonzales*, 425 F.3d 1051, 1057, 1059-60 (7th Cir. 2005). This conclusion is supported by the fact that we long have applied the *de novo* standard of review to a district court's application of res judicata. *See Nestor v. Pratt & Whitney*, 466 F.3d 65, 70 (2d Cir. 2006); *Legnani v. Alitalia Linee Aeree Italiane, S.p.A.*, 400 F.3d 139, 141 (2d Cir. 2005) (per curiam).

Res judicata evokes the common law principles of judicial economy and comity. It provides that a final judgment on the merits bars a subsequent action between the same parties over the same cause of action. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 502 (2001) (citing cases). Provided the parties have had a full and fair opportunity to litigate the matter, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996) (quoting *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981)) (internal quotation marks omitted).

Relying principally on the strength of *Vermont Yankee Nuclear Power Corp. v. Natural Res. Defense Council, Inc.*, 435 U.S. 519, 543-44 (1978), the Government asserts that "the common law preclusion rules that federal courts have developed for federal court proceedings cannot be imposed on agencies by reviewing courts." Appellee Brief at 20. However, the BIA already has determined that it will apply preclusion principles in immigration proceedings. *Matter of Fedorenko*, 19 I. & N. Dec. 57, 61 (B.I.A. 1984). In addition, the Supreme Court has stated that "where a common-law principle is well established, as are the rules of preclusion, the

6

courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Astoria Fed. Sav. & Loan Ass'n. v. Solimino*, 501 U.S. 104, 108 (1991) (citations and internal quotation marks omitted); *see, e.g., Wallace Corp. v. NLRB*, 323 U.S. 248, 253-55 (1944); *cf. United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966) ("When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose."). Ultimately, "the question is not whether administrative estoppel is wise but whether it is intended by the legislature." *Astoria*, 501 U.S. 108; *accord Duvall v. Att'y Gen.*, 436 F.3d 382, 387-88 (3d Cir. 2006); *see also Bravo-Pedroza v. Gonzales*, 475 F.3d 1358, 1359 (9th Cir. 2007).

Whether it would be consistent with Congress's statutory scheme to apply res judicata and bar the DHS from lodging additional grounds of removal in successive immigration proceedings indeed may be a difficult question. *See Johnson*, 378 F.3d at 172 n.10. But we need not solve that problem today.[4] Even assuming that res judicata does apply to subsequent quasi-judicial proceedings, it will do Channer no good here.

---

[4] As indicated in the text, a determination of whether res judicata applies in the immigration context should be guided by the view that a doctrine of repose should not be applied so as to frustrate clearly expressed congressional intent. We note that Channer falls into the category of aliens whom Congress repeatedly and unambiguously has sought to remove: aliens convicted of aggravated felonies. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); *Kuhali v. Reno*, 266 F.3d 93, 111 (2d Cir. 2001) (observing with respect to Section 1227(a)(2)(A)(iii) that "Congress has a legitimate interest in protecting society from the commission of aggravated felonies" and "expeditiously removing dangerous aliens from the country"). It may be that when DHS attempts to remove aliens convicted of aggravated felonies – as opposed to aliens falling into some other category making them removable – the determination of whether res judicata applies changes, given Congress's clear and emphatic position with respect to such aliens. We nevertheless express no view on the applicability of res judicata in this context, nor on how the calculus may change in circumstances where such a clear policy is not at issue.

In deciding whether a suit is barred by res judicata, "[i]t must first be determined that the second suit involves the same 'claim' or – 'nucleus of operative fact' – as the first suit." *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (quoting *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997)) (internal quotation marks omitted). Three indicia determine whether the second suit involves the same claim or nucleus of operative fact as the first: (1) whether the underlying facts are "related in time, space, origin, or motivation;" (2) whether the underlying facts "form a convenient trial unit;" and (3) whether their "treatment as a unit conforms to the parties' expectations." *Id*. (internal quotation marks omitted). "[T]he facts essential to the barred second suit need not be the same as the facts that were necessary to the first suit. It is instead enough that 'the facts essential to the second were [already] present in the first.'" *Id*. at 110–11 (quoting *Computer Assocs. Int'l v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997) (emphasis in *Waldman* omitted)).

Channer fails to demonstrate that the two proceedings satisfy the three indicia that determine whether a second suit involves the same claim or nucleus of operative fact as the first. While the two removal claims may be related in terms of time and motivation,[5] they are not related in terms of place and origin. Channer seeks to employ an overly broad category of comparison to encapture both claims; he alleges that the charge in the second deportation proceeding was identical to the one raised in the first – that he was removable for having committed an aggravated felony. Channer suggests that it is irrelevant that the two convictions stemmed from different factual predicates because res judicata requires only that the facts essential to the second suit existed and were known to the complaining party at the time of the first. We disagree.

---

[5] Both convictions were final prior to 1994 – when the first removal charge was amended – and qualified as aggravated felonies.

8

In Channer's case, each claim did not originate from the same nucleus of operative fact. The two factual predicates produced two distinct convictions based on different charges. The federal court convicted Channer of carrying a firearm during a drug trafficking crime in violation of federal law, and the Connecticut state court convicted him of robbery and conspiracy to commit robbery in violation of state law. In 1991, the INS charged Channer with deportation based on his 1990 federal conviction, and in 1999 it premised his removal on his state court robbery conviction. Each removal claim is predicated on a separate conviction for a distinct offense prosecuted in a different jurisdiction.

Nor do the two claims form a convenient trial unit. While the remedy for each claim is identical – deportation for committing an aggravated felony – the contrasting evidence required to prove each claim and the different elements of each crime demonstrate that they do not form a convenient trial unit. The two claims are distinct; res judicata does not bar the INS from relitigating the same charge based on a different set of factual predicates.

Channer also argues that claim preclusion bars the INS from relitigating his deportation because the INS failed to amend his original OSC to include all grounds for deportation. He contends that the filing date of the amended complaint is the dispositive date for determining whether the subsequent proceeding raised claims that previously could have been raised. *See Curtis v. Citibank, N.A.,* 226 F.3d 133, 139 (2d Cir. 2000). Claim preclusion, however, "depends upon whether the same or connected transactions are at issue and the same proof is needed to support the claims in both suits or, in other words, whether facts essential to the second suit were present in the first suit." *Id.* Petitioner correctly notes that the INS *could* have alleged both the federal and state convictions during the 1994 deportation proceeding as the underlying factual predicates existed at that time. In Channer's case, however, each deportation proceeding stemmed from a separate transaction – each required different proof. Consequently, claim

9

preclusion would not bar the INS from relitigating Petitioner's deportation based on the failure of the INS to include his state conviction when it amended the charge in Petitioner's original deportation proceeding.

Channer also argues that the INS regulations require it to include any new charges during the pendency of a deportation hearing, and that by deciding not to present all relevant claims in a single proceeding, the INS "failed to avail itself of its own regulations." Petitioner cites *Bravo-Pedroza v. Gonzales*, in which the Ninth Circuit held that 8 C.F.R. § 3.30 requires the DHS to bring new deportation charges during the pendency of an immigration proceeding.[6] 475 F.3d at 1360. In *Bravo-Pedroza,* the Ninth Circuit found that § 3.30 provides that new charges of deportation *must* "be [brought] *during the pendency of immigration proceedings*." *Id.* at 1360. The Court admonished DHS for seeking to start a new case against Bravo-Pedroza instead of utilizing § 3.30 to supplement its earlier charges. The Court ultimately concluded that the elements of res judicata were met and granted Bravo-Pedroza's petition. *Id.*

We disagree with that view of the regulation. The regulation states: "At any time during deportation or removal proceedings, additional or substituted charges of deportability and/or factual allegations *may* be lodged by the Service in writing." 8 C.F.R. § 3.30 (emphasis added). The regulation permits but does not affirmatively require DHS to supplement already existing charges. Consequently, we do not find that § 3.30 required DHS to lodge all deportation charges against Channer in a single proceeding.

## CONCLUSION

For the above stated reasons, Petitioner's request for relief from the order of removal must be **DENIED**.

---

[6] 8 C.F.R. § 3.30 is now codified at 8 C.F.R. § 1003.30.