NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0080n.06

Case No. 19-4025

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED
Feb 23, 2022
DEBORAH S. HUNT, Clerk

RAMON JASSO ARANGURE,

    Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS

BEFORE: THAPAR, BUSH, and NALBANDIAN, Circuit Judges.

The court delivered a PER CURIAM opinion. THAPAR, J. (pp. 13–16), delivered a separate concurring opinion.

PER CURIAM. Ramon Jasso Arangure lived in the United States as a lawful permanent resident. After he pled guilty to first-degree home invasion, the Department of Homeland Security initiated removal. But the removal didn't go as planned: DHS failed to show that Jasso was in fact removable, and the immigration judge terminated the proceeding. So DHS tried again. It started a second removal proceeding based on a new legal theory but the same underlying facts. The problem? The doctrine of claim preclusion prevents parties from litigating matters they failed to raise in an earlier case. Because claim preclusion barred the second removal proceeding, we grant the petition for review, vacate, and remand.

I.

Ramon Jasso Arangure is a native and citizen of Mexico. He married a United States citizen and became a lawful permanent resident in 2003. Eleven years later, Jasso pled guilty to first-degree home invasion.[1] *See* Mich. Comp. Laws § 750.110a(2) (1999).

Shortly after, the Department of Homeland Security initiated removal. It argued that Jasso was removable for committing an aggravated felony. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). Specifically, DHS argued that Jasso had committed a "crime of violence." *See id.* § 1101(a)(43)(F) (defining aggravated felonies to include crimes of violence). The statute defines a crime of violence in two ways: (1) through an elements clause, and (2) through a residual clause. 18 U.S.C. § 16. The immigration judge held that Jasso was removable under the residual clause. But while Jasso's appeal was pending, we determined that the residual clause is unconstitutional. *Shuti v. Lynch*, 828 F.3d 440, 451 (6th Cir. 2016).

So the Board of Immigration Appeals (BIA) remanded the case for the immigration judge to consider if Jasso was removable under the elements clause. The immigration judge held that Jasso's conviction did not qualify as a crime of violence under that clause. As a result, he concluded the charge that Jasso had committed an aggravated felony was "not sustained" and terminated the proceeding.

Undeterred, DHS tried a different tack: It opened a second removal proceeding and argued that Jasso was instead removable for committing a "burglary offense." *See* 8 U.S.C. § 1101(a)(43)(G) (defining aggravated felonies to include burglary offenses). Jasso argued that claim preclusion barred the second proceeding, but the immigration judge and the BIA disagreed. Both held that claim preclusion does not apply to removal proceedings.

---

[1] Ramon Jasso Arangure refers to himself as "Jasso," so we follow suit.

We reversed. Because Congress legislates against the background of the common law, removal proceedings are subject to the normal rules of claim preclusion. *Arangure v. Whitaker*, 911 F.3d 333, 342–45 (6th Cir. 2018). We then resolved three out of the four elements of claim preclusion in Jasso's favor. *Id.* at 345–47. But the record was unclear as to whether the parties litigated Jasso's first removal proceeding to a final judgment on the merits. *Id.* at 347. So we vacated and remanded for clarification from the BIA. *Id.* at 347–48. On remand, the BIA held that the immigration judge terminated Jasso's removal proceeding without prejudice. Jasso now appeals.

II.

We review the BIA's legal holdings de novo but are "highly deferential" to the BIA's findings of fact. *Kilic v. Barr*, 965 F.3d 469, 473 (6th Cir. 2020). Claim preclusion applies if Jasso's first removal proceeding (1) was litigated to a final judgment on the merits, (2) arose out of the same factual occurrence as his second removal proceeding, (3) involved the same parties, and (4) was based on the same cause of action. *See Montana v. United States*, 440 U.S. 147, 153 (1979). The sole question before us is whether Jasso's first removal proceeding was litigated to a final judgment on the merits. *See Arangure*, 911 F.3d at 346–47.

As the name suggests, a final judgment on the merits has two components: The judgment is (1) final and (2) on the merits. *See* 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4432 (3d ed. 2002) ("Finality . . . is clearly distinct from the other [claim preclusion] requirements."). In the context of claim preclusion, a judgment is final if it "represents the completion of all steps in the adjudication of the claim," Restatement (Second) of Judgments § 13 cmt. b (Am. L. Inst. 1982), "leaving nothing to be done . . . save execution of the judgment," *Clay v. United States*, 537 U.S. 522, 527 (2003). And a judgment is on the merits when it "passes

directly on the substance of a particular claim." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501–02 (2001) (cleaned up). Taken together, a final judgment on the merits "signifies the 'death knell' of the litigation . . . permanently foreclos[ing] a party from further advancing a claim or defense." *Mitchell v. Chapman*, 343 F.3d 811, 821 (6th Cir. 2003) (citations omitted).

## A.

Start with finality. Because a judgment without prejudice allows a party to return "to the same court, with the same underlying claim," it is "not truly final." *Arangure*, 911 F.3d at 347 (cleaned up). As a result, we must determine whether Jasso's first removal proceeding was terminated with or without prejudice.[2]

The problem is that the record is unclear. The immigration judge's decision simply held that Jasso's charge of removability was "not sustained" and terminated the proceeding. A.R. 363. It wasn't until a later hearing that the immigration judge clarified: "[The termination] is without prejudice. It is only an analysis of the charge as originally presented. So the Government is in its normal position at this point. If there are other charges o[f] removability that the Government wishes to prefer, it may do so." A.R. 456.

The BIA held that the immigration judge's statement is dispositive. It first determined that immigration judges have discretion to terminate proceedings without prejudice. Then it held that there is no default rule when an immigration judge does not specify a termination's effect. Finally, the BIA determined that, absent a default rule, it must rely upon the immigration judge's statement. We address each of these conclusions in turn.

---

[2] Both parties agree that while the terms "dismissal" and "termination" are often used interchangeably, they have distinct meanings under the Immigration and Nationality Act and its implementing regulations.

*Discretion to terminate without prejudice.* The BIA's first conclusion is that immigration judges have discretion to terminate removal proceedings without prejudice. The BIA reasoned that because no "provision in the [Immigration and Nationality Act (INA)] or regulations requir[es] an Immigration Judge to designate a termination order as being entered with or without prejudice," an immigration judge must have discretion to choose. A.R. 6.

The BIA's analysis is backwards, but its conclusion is correct. Immigration judges do not have freestanding authority to adjudicate proceedings. *See Hernandez-Serrano v. Barr*, 981 F.3d 459, 462 (6th Cir. 2020); *see also Matter of S-O-G- & F-D-B-*, 27 I. & N. Dec. 462, 465–66 (A.G. 2018). Rather, immigration judges "exercise the powers and duties delegated to them by the [INA] and by the Attorney General through regulation." 8 C.F.R. § 1003.10(b). As a result, it is not enough to determine that the INA and its implementing regulations do not explicitly prohibit an exercise of power; there must be an affirmative delegation of authority.

The INA and its implementing regulations make such a delegation. Among an immigration judge's enumerated powers is the ability to decide removability and terminate removal proceedings. *See* 8 U.S.C. § 1229a(c)(l)(A); 8 C.F.R. § 1240.12(c). True, neither the INA nor its implementing regulations specify whether termination must be with or without prejudice.[3] But

---

[3] DHS correctly notes that the INA's implementing regulations—specifically 8 C.F.R. §§ 1240.12(c) and 1003.10(b)—give immigration judges wide latitude to handle cases. But neither regulation resolves the question before us. Consider § 1240.12(c). It provides: "The order of the immigration judge shall direct the respondent's removal from the United States, or the termination of the proceedings, or other such disposition of the case as may be appropriate." *Id.* At first glance, the open-ended phrase "as may be appropriate" seems promising. But viewing the sentence as a whole, it is clear that "as may be appropriate" applies only to "other such disposition[s]"—and not to orders directing "the termination of the proceedings." So § 1240.12(c) is inapplicable.

As for § 1003.10(b), it provides that immigration judges "may take any action consistent with their authorities under the Act and regulations that is appropriate and necessary for the disposition of such cases." *See also* 8 C.F.R. § 1240.1(a)(1)(iv) (similar language). Again, the broad language of "any action" is initially compelling. But upon a closer look, this regulation does not create a new source of authority for immigration judges. Instead, it merely gives immigration judges free license to act within their already enumerated powers. The key phrase is "consistent with

silence "does not necessarily connote ambiguity." *Arangure*, 911 F.3d at 338. Rather, Congress legislates "against a background of common-law adjudicatory principles." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991); *see Arangure*, 911 F.3d at 342–45 (applying the common-law presumption canon to interpret the INA). As a result, we assume that well-established principles of common law apply unless "a statutory purpose to the contrary is evident." *Astoria*, 501 U.S. at 108 (citation omitted).

It is well established that courts at law could render a judgment of nonsuit—the functional equivalent of a dismissal without prejudice. *See United States v. Parker*, 120 U.S. 89, 95 (1887); *Buchholz-Hill Transp. Co. v. Baxter*, 206 N.Y. 173, 177 (1912). A nonsuit was "the medium by which the court intimate[d] an opinion that the plaintiff ha[d] not made out a sufficient case for the consideration of the jury." *Slocum v. N.Y. Life Ins. Co.*, 228 U.S. 364, 393 (1913). Like a dismissal without prejudice, a judgment of nonsuit did not trigger claim preclusion. *See id.* at 394–95; *see also* Note, *Developments in the Law of Res Judicata*, 65 Harv. L. Rev. 818, 838 (1952). And a nonsuit could be ordered at the court's sole discretion (though it was traditionally available only at the plaintiff's request). *See Hopkins v. Nashville, Chattanooga & St. Louis Ry.*, 34 S.W. 1029, 1035–37 (Tenn. 1896); Restatement (First) of Judgments § 53 cmt. b (Am. L. Inst. 1942); 1 Walter M. Rose, *A Code of Federal Procedure* 869 (1907). In short, at common law, courts could terminate cases in the same manner as a dismissal without prejudice.

And there is no "statutory purpose to the contrary." *Astoria*, 501 U.S. at 108 (citation omitted). We have not identified any provision or function of the INA that a termination without

---

their authorities." An immigration judge may take "any action," *so long as it is* "consistent with their authorities." *See Matter of S-O-G-*, 27 I. & N. Dec. at 465–66 (holding that immigration judges may terminate removal proceedings only under circumstances expressly permitted by regulation or the INA). Section 1003.10(b) does not offer any answers on what an immigration judge's authorities are in the first place. So it is also inapplicable.

prejudice would contradict, nullify, or make superfluous. *See id.* at 111–13; *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 151–53 (2015). What's more, "immigration courts are a replacement . . . for a full adjudication in Article III courts." *Arangure*, 911 F.3d at 344. The INA suggests no reason why the benefits of terminating without prejudice in the Article III context—conserving judicial resources, avoiding prejudice to parties for fixable mistakes, and pursuing justice—do not apply in the immigration context.

*Default rule.* The BIA's second conclusion is that terminations are not presumptively with or without prejudice. The INA and its implementing regulations do not provide a default rule, so we return to the common law.

Like modern-day cases, suits at common law that were not resolved or dismissed by motion of a party or the court proceeded to a verdict and judgment. *See* A.C. Freeman, *A Treatise on the Law of Judgments* § 760 (Edward W. Tuttle ed., 5th ed. 1925); *see generally* William Stewart, *A Federal Suit at Law* 120–28 (1912). A judgment at law was necessarily with prejudice: It "put[] an end to all further controversy," *Hopkins v. Lee*, 19 U.S. (6 Wheat.) 109, 113 (1821), and was "conclusive on the rights of the parties thereby adjudicated," *Sibbald v. United States*, 37 U.S. (12 Pet.) 488, 492 (1838). Hence, the presumption at common law was that, unless otherwise stated, a judgment resolving a suit's merits at the end of a proceeding was with prejudice.

Furthermore, there is no statutory purpose contrary to a presumption of prejudice. *See Astoria*, 501 U.S. at 111–13; *B & B Hardware*, 575 U.S. at 151–53. Indeed, the INA's structure counsels in favor of resolving removal proceedings with prejudice: "DHS's burden of proof in each removal proceeding—clear and convincing evidence—would be rendered largely meaningless if DHS could repeatedly bring one proceeding after another until it got the result it

wanted." *Arangure*, 911 F.3d at 344 (cleaned up). Instead, the INA requires an immigration judge to adjudicate the merits at the end of a removal proceeding. *See* 8 U.S.C. § 1229a(c)(1)(A). Because the INA's statutory purpose does not counsel otherwise, we apply the common-law rule that a judgment resolving a suit's merits at the end of a proceeding is presumptively with prejudice.[4]

*Immigration judge's post-decision characterization.* The BIA's final conclusion is that the immigration judge's statement that the termination was without prejudice is controlling. But while the BIA reasoned that the immigration judge merely clarified its written decision, DHS goes one step further on appeal. It suggests that the immigration judge actually issued two decisions: a written decision terminating Jasso's removal proceeding followed by an oral decision stating that the termination was without prejudice.[5]

This argument conflicts with the plain text of the INA's implementing regulations. The regulations provide: "*The decision* of the immigration judge may be oral or written." 8 C.F.R. § 1240.12(a) (emphasis added). The use of a singular noun ("decision") suggests that immigration judges don't get multiple bites at the apple. *Cf. Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021) ("At one level, today's dispute may seem semantic, focused on a single word, a small one at that. But words are how the law constrains power.").

---

[4] Lest anyone think that this rule is unfair to DHS, it had ample opportunity to salvage the first removal proceeding. At any point before the immigration judge's decision, DHS could have lodged new removal charges or moved to dismiss without prejudice. *See* 8 C.F.R. §§ 1003.30, 1239.2(c). Instead, DHS let the first removal proceeding terminate and elected to just try again with a new removal proceeding.

Of course, the common law serves as a double-edged sword in this case. The immigration judge could have simply terminated this case without prejudice. He just didn't do so here.

[5] DHS forfeited this argument by raising it only in a citation parenthetical. But because this theory also fails on the merits, we still address it in full.

But even if immigration judges may issue multiple decisions terminating a removal proceeding, the immigration judge here never issued a second, oral decision. The regulations mandate that oral decisions be made "in the presence of the parties and a memorandum summarizing the oral decision shall be served on the parties." 8 C.F.R. § 1003.37(a). Although both parties were present at the post-decision hearing, the immigration judge never provided a summary memorandum of an oral decision. So his post-decision statements cannot qualify as an oral decision.

The immigration judge's statements also cannot be construed as correcting the written decision. The regulations do provide that an immigration judge may reopen his decision "to correct a ministerial mistake or typographical error." *Id.* § 1003.23(b)(1). But this power is limited. The immigration judge may reopen only "on his or her own motion." *Id.* And a decision may not be reopened once jurisdiction vests in the BIA. *Id.*; *see also id.* § 1003.39. There is no other avenue for an immigration judge to sua sponte modify the decision.

Here, the immigration judge's statements do not qualify as a motion to reopen. First, clarifying a decision's effect is likely more than simply correcting a "ministerial mistake or typographical error." *Id.* § 1003.23(b)(1); *cf.* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 234–35 (2012) (noting that judges still honor the legal text when they correct basic typographical errors such as when "party" is misspelled as "partly"). Second, the immigration judge did not make a motion or even indicate that he intended to alter the decision. At the hearing, the immigration judge described his decision and notified Jasso that he would receive a copy of the decision by mail. DHS responded that it was reviewing other potential charges but was not clear on the decision's effect. It was only then that the immigration judge stated the termination was without prejudice. The immigration judge never indicated that the

decision itself was changed, nor did he provide a revised decision to either party. At most, the immigration judge merely explained the decision's intended outcome. So the immigration judge's statements at the post-decision hearing could not alter the decision.[6]

Nor should these statements influence our analysis. For claim preclusion, "[w]hat really matters is the effect of the judgment." *Arangure*, 911 F.3d at 347; *see Wilkins v. Jakeway*, 183 F.3d 528, 533 (6th Cir. 1999) (disregarding "what the [district] court said about deciding the matter" when determining a judgment's preclusive effect). Though the record is a useful source of information and context, what ultimately has legal effect—and is subject to review by the BIA and our court—is the immigration judge's decision. *See Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009); 8 C.F.R. §§ 1003.1(b)(3), 1003.38(a). In Jasso's case, the immigration judge's statements did not alter the formal decision—they were a post-hoc characterization. Thus, the immigration judge's statements are not controlling.

In short, no evidence in the record challenges the presumption that the termination of a removal proceeding is with prejudice. We therefore conclude that Jasso's first removal proceeding was terminated with prejudice.[7]

---

[6] Our reasoning might strike some as a quixotic search for magic words. Especially given that immigration judges often face a crushing caseload. But we are obligated to follow the law as written. We cannot add to or subtract from it—even if its mandates appear overly stringent at times. As Justice Scalia once remarked: "*[O]f course it's formalistic. The rule of law is *about* form. . . . Long live formalism. It is what makes a government a government of laws and not of men.*" Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 25 (Amy Gutmann ed., 1997).

[7] In its supplemental brief, DHS points to an agency regulation that dictates when an immigration judge's decision becomes final. Under that regulation, an immigration judge's decision only "becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first." 8 C.F.R. § 1003.39. At that point, the decision may be executed as "the final agency determination." *Id.* § 1003.1(e)(4)(ii); *see id.* § 1003.6(a); *In re Rodriguez-Diaz*, 22 I. & N. Dec. 1320, 1322 (B.I.A. 2000). Citing *Resurreccion v. Holder*, 573 F. App'x 669, 669 (9th Cir. 2014), DHS argues that it may bring "additional or substituted charges of deportability" up until an immigration judge's decision becomes final under § 1003.39. 8 C.F.R. § 1003.30; *see also Herrera Gonzalez v. Rosen*, 984 F.3d 638, 641 (8th Cir. 2021) (holding that the government may add new charges under § 1003.30 "whether or not the immigration judge has sustained a particular charge"). And DHS says it did so here because it filed a new notice to appear before the first proceeding became final under § 1003.39. The problem? Unlike in

---

B.

We have one issue left to resolve: whether the termination of Jasso's first removal proceeding was "on the merits." (Remember, claim preclusion applies only if Jasso's first removal proceeding was litigated to a final judgment *on the merits*.) Here, the immigration judge's ruling "hinged on a quintessential merits decision: whether the undisputed facts established all the elements of [Jasso's charge of removability]." *Brownback v. King*, 141 S. Ct. 740, 748 (2021).

Jasso was charged as removable for committing a crime of violence. *See* 18 U.S.C. § 16. After applying the modified categorical approach, the immigration judge concluded that Jasso's conviction is "categorically *not* a crime of violence" and the "charge of removability is not sustained." A.R. 362–63. In doing so, the immigration judge "passed directly on the substance" of every claim before him. *Semtek*, 531 U.S. at 501 (cleaned up). So the immigration judge rendered a judgment on the merits.

\* \* \*

DHS had ample opportunity to salvage its first removal proceeding against Jasso. But it missed its chance. And because that proceeding was litigated to a final judgment on the merits, claim preclusion barred DHS from bringing a second removal proceeding based on the same facts

---

*Resurreccion* and *Herrera Gonzalez*, DHS did not add "additional or substituted charges" to an existing proceeding. 8 C.F.R. § 1003.30. It initiated a separate removal proceeding by filing a new notice to appear—a position DHS has taken throughout this litigation (including in this appeal) and that both this court and the BIA have accepted. *See, e.g.*, Resp't Br. 31 (conceding that DHS did "not avail itself" of the opportunity to file additional charges under § 1003.30); *Arangure*, 911 F.3d at 337 (noting that DHS "initiated a second removal proceeding against Jasso"); *In re Arangure*, 2019 WL 7168754, \*4 (B.I.A. 2019) (explaining that DHS "could have availed itself of" § 1003.30 but "has not taken" that action and instead instituted a new removal proceeding). We cannot revisit that position now. *See Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (stating that the "law-of-the-case doctrine precludes reconsideration of issues decided at an earlier stage of the case" (citation omitted)). And under res judicata principles, even if the first removal proceeding was not final when DHS *initiated* its second removal proceeding, once the first removal proceeding became final it also became claim preclusive. *See, e.g.*, *Chi., Rock Island & Pac. Ry. Co. v. Schendel*, 270 U.S. 611, 616–17 (1926) ("[I]rrespective of which action or proceeding was first brought, it is the first final judgment rendered . . . which becomes conclusive in the other as res judicata."); Restatement (Second) of Judgments § 14 cmt. a.

and cause of action. Thus, we grant the petition for review, vacate the BIA's decision, and remand

for proceedings consistent with this opinion.

THAPAR, Circuit Judge, concurring. According to the Supreme Court, the common-law doctrine of res judicata applies when administrative-agency determinations attain finality. *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991). "When an administrative agency is acting in a judicial capacity . . . courts have not hesitated to apply *res judicata* to enforce repose." *Id.* (citation omitted). In this appeal and the one preceding it, we have done our best to faithfully apply this doctrine. *See Arangure v. Whitaker*, 911 F.3d 333, 343–45 (6th Cir. 2018).

But I have my doubts about treating agency decisions like judicial ones. To begin, applying res judicata to agency decisions is a relatively new phenomenon. It's often defended on the ground that Congress "legislate[s] against a background of common-law adjudicatory principles." *Astoria*, 501 U.S. at 108. Historically, however, res judicata was reserved for judicial decisions. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 164 (2015) (Thomas, J., dissenting) (explaining that "history undercuts any suggestion" that "administrative preclusion was widely accepted at common law"). It applied only to decisions made by a "[c]ourt of competent jurisdiction." *Hopkins v. Lee*, 19 U.S. (6 Wheat.) 109, 113 (1821). And agencies were understood to be distinct from courts. *See B & B Hardware*, 575 U.S. at 164 (Thomas, J., dissenting). Hence, well into the 20th century, courts still adhered to the "well settled doctrine that res judicata and equitable estoppel do not ordinarily apply to decisions of administrative tribunals." *Churchill Tabernacle v. FCC*, 160 F.2d 244, 246 (D.C. Cir. 1947); *see B & B Hardware*, 575 U.S. at 165 (Thomas, J., dissenting) (noting that courts "declined to apply general preclusion principles to decisions of administrative agencies").

Why might courts be subject to different rules than agencies? Unlike agencies, courts are meant to adjudicate core private rights. Core private rights are those that "belong to particular men" as individuals. 1 William Blackstone, *Commentaries* \*119; *see Springer v. Cleveland Clinic*

*Emp. Health Plan Total Care*, 900 F.3d 284, 292 (6th Cir. 2018) (Thapar, J., concurring) (describing private rights as those that "vest in an individual" rather than the "whole community"). They include the rights to life, liberty, and property. *See* 1 Blackstone, *supra*, at *129, *138; *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 713 (2015) (Thomas, J., dissenting). As the preeminent English jurist William Blackstone put it, these were the "absolute" rights of Englishmen. 1 Blackstone, *supra*, at *119. And he asserted that their protection was the "first and primary end of human laws." *Id.* at *120; *see also* Caleb Nelson, *Adjudication in the Political Branches*, 107 Colum. L. Rev. 559, 567 (2007) (noting that Blackstone put "core private rights on a special plane").

In contrast with core private rights are public rights and certain "government-created privileges." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 344 n.2 (2015) (Thomas, J., dissenting) (quoting Nelson, *supra*, at 566–67). Public rights are those "belonging to the people at large." *Id.* (quoting Nelson, *supra*, at 566). They arise between individuals and the government, *see Ex parte Bakelite Corp.*, 279 U.S. 438, 451 (1929), and often "derive[] from a federal regulatory scheme," *Stern v. Marshall*, 564 U.S. 462, 490 (2011). To be sure, determining whether something is a public right has proven "anything but easy." *In re Renewable Energy Dev. Corp.*, 792 F.3d 1274, 1278 (10th Cir. 2015) (Gorsuch, J.). Indeed, to this day, scholars continue to debate the definition. *See, e.g.*, Nelson, *supra*, at 566; Richard H. Fallon, Jr. et al., *Hart and Wechsler's The Federal Courts and the Federal System* 354 & n.5 (7th ed. 2015). But the Supreme Court has been clear: However we draw the line, immigration is a public right. *See Crowell v. Benson*, 285 U.S. 22, 50–51 (1932); *see also* Stephen H. Legomsky, *Restructuring Immigration Adjudication*,

59 Duke L.J. 1635, 1688 (2010) (explaining that "the rights adjudicated in removal proceedings are public rights under any imaginable standard").[1]

The adjudication of public rights (like immigration) entails "different political considerations" than the adjudication of core private rights. Nelson, *supra*, at 572. Namely, a private person's life, liberty, and property are not at stake when public rights are adjudicated. *See* William Baude, *Adjudication Outside Article III*, 133 Harv. L. Rev. 1511, 1536 (2020). And this difference is reflected in our constitutional design: Unlike with core private rights, the adjudication of immigration rights does not require Article III's judicial power. *See Crowell*, 285 U.S. at 50; *see also Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (How.) 272, 283–85 (1855). As one scholar put it, the Constitution does not bar an executive officer from "finding facts, or applying law to those facts, so long as he does not authorize the deprivation of life, liberty, or property." Baude, *supra*, at 1536; *see also* John Harrison, *Public Rights, Private Privileges, and Article III*, 54 Ga. L. Rev. 143, 148–50 (2019) (labeling the adjudication of public rights a "characteristic executive function"). Thus, Congress can vest the power to adjudicate immigration rights in agencies alone. *See Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1373 (2018).

What's more, on top of giving an agency power over immigration rights, Congress can design the agency's adjudicative procedures. It can craft elaborate procedures or summary ones; it can grant agency decisions preclusive effect, or it can withhold it. In short, Congress "has discretion, based on its own weighing of policy goals, to prescribe the procedures by which an agency will perform its work and render decisions." *Duvall v. Att'y Gen. of U.S.*, 436 F.3d 382, 386 (3d Cir. 2006). And courts overstep their role when they "engraft their own notions of proper

---

[1] When I say "immigration," I am referring to the right of a noncitizen to enter or remain.

procedures upon agencies entrusted with substantive functions by Congress." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 525 (1978) (cleaned up). Indeed, the Supreme Court has acknowledged that courts do not have "free rein to impose rules of preclusion" as we see fit. *Astoria*, 501 U.S. at 108.

Yet in this context, courts have done just that. We have taken it on ourselves to "impose upon administrative agencies procedural doctrines or rules of decision." *Duvall*, 436 F.3d at 386. In a sharp break with the past, an agency's adjudicative decision now "has the same effects under the rules of res judicata" as a court's judgment. Restatement (Second) of Judgments § 83(1); *see, e.g.*, *B & B Hardware*, 575 U.S. at 148. And this case highlights the problem. Despite Congress's "clear and emphatic position" toward removing immigrants convicted of serious crimes, *Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 280 n.4 (2d Cir. 2008), we must apply a common-law doctrine that frustrates the agency's enforcement of our immigration laws—with no indication that Congress wanted the doctrine to apply. Some might like that result. But no one should like the way it was reached. To be sure, Congress could always choose to give preclusive effect to some agency decisions. Yet it hasn't done so, at least not here. And our judicial commissions do not empower us to act in Congress's place.

Because precedent compels it, I join the per curiam opinion.