22-6290-ag
*Mullins Cruz v. Garland*

BIA
Auh, IJ
A041 753 162

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of March, two thousand twenty-four.

Present:
> JON O. NEWMAN,
> EUNICE C. LEE,
> ALISON J. NATHAN,
> *Circuit Judges.*

_____

WILL KENT MULLINS CRUZ,

*Petitioner*,

v.                                                                22-6290-ag

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,

*Respondent*.

_____

For Petitioner:                    JOHN H. PENG (Rohmah A. Javed, *on the brief*), Prisoners' Legal Services of New York, Karen L. Murtagh, Executive Director, Albany, NY.

For Respondent: NEHAL H. KAMANI, Trial Attorney, Office of Immigration Litigation (David J. Schor, Senior Litigation Counsel, *on the brief*), *for* Brian M. Boynton, Principal Deputy Assistant Attorney General, United States Department of Justice, Washington, DC.

**UPON DUE CONSIDERATION** of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**.

Petitioner Will Kent Mullins Cruz petitions for review of a BIA decision affirming a decision of an Immigration Judge ("IJ") ordering his removal to Honduras. He argues that he cannot be removed because he derived United States citizenship from his father pursuant to the Child Citizenship Act ("CCA"), 8 U.S.C. § 1431(a), and that the agency and this Court are precluded from finding otherwise because an IJ terminated his prior removal proceeding on the ground that he was a citizen under that statute. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We have reviewed both the IJ's and the BIA's decisions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). Although Mullins Cruz was ordered removed on criminal grounds that limit our jurisdiction to constitutional claims and questions of law, we have jurisdiction to review his derivative citizenship claim because citizenship is a question of law.[1] *See* 8 U.S.C. § 1252(a)(2)(C), (D); *Gil v. Sessions*, 851 F.3d 184, 186 n.1 (2d Cir. 2017). We review such claims *de novo*. *Gil*, 851 F.3d at 186. The

---

[1] The parties dispute whether we must begin with an independent determination of citizenship to establish whether the jurisdictional bar—which applies only to petitions brought by "aliens"—constrains our review. *See* 8 U.S.C. § 1252(a)(2)(C). That dispute is ultimately immaterial because, for the reasons discussed below, we conclude that Mullins Cruz is not a citizen.

agency's application of preclusion principles is also a question of law that we review *de novo*. *See Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 279 (2d Cir. 2008).

## I.    Claim Preclusion[2]

Mullins Cruz raises an initial question of claim preclusion.   He argues that his prior removal proceeding, which was terminated in 2004 after an IJ deemed him a citizen, raised the same "claim" of noncitizenship that is being raised in the current removal proceeding because alienage is a threshold issue in any removal proceeding and the facts relevant to citizenship were the same in both proceedings.   We are not convinced that the "claim" should be defined by this threshold issue, rather than the charge of removability.[3]

Claim preclusion "provides that a final judgment on the merits bars a subsequent action between the same parties *over the same cause of action*." *Channer*, 527 F.3d at 279 (emphasis added).   Accordingly, the first requirement of claim preclusion is that "the second suit involves the same 'claim' or—'nucleus of operative fact'—as the first suit." *Id.* at 280 (quoting *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000)).   The three factors relevant to that determination are "(1) whether the underlying facts are related in time, space, origin, or

---

[2] "The related doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) are meant to protect parties from having to relitigate identical claims or issues and to promote judicial economy." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 731 (2d Cir. 1998).   Although sometimes discussed collectively as "res judicata," these are distinct doctrines subject to different standards.   *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984).   While the government addresses both claim and issue preclusion in its brief, we focus only on claim preclusion, as Mullins Cruz raises no arguments in his brief about issue preclusion and acknowledged at oral argument that he asserts claim preclusion.

[3] The parties contest whether preclusion principles apply to administrative findings of citizenship in removal proceedings.   We need not answer that question, however, because "[e]ven assuming that res judicata does apply to subsequent quasi-judicial proceedings, it will do [Mullins Cruz] no good here." *Channer*, 527 F.3d at 280.

motivation; (2) whether the underlying facts form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations." *Id.* (internal quotation marks omitted). "When a subsequent action . . . relies on facts that occurred . . . after the earlier action commenced, claim preclusion will not bar a suit . . . based upon legally significant acts occurring *after* the filing of a prior suit that was itself based upon earlier acts." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 501 (2d Cir. 2014) (internal quotation marks omitted).

Here, the first removal proceeding charged Mullins Cruz with removability based on his 2000 New York conviction for second-degree murder, and an IJ terminated those proceedings in 2004. The current removal proceeding also charged Mullins Cruz with removability, but the charges were predicated on post-2004 convictions (both in conjunction with and independent from the 2000 conviction) that could not have been charged in the prior proceeding.[4] That is a different claim. *See id.* at 502; *Channer*, 527 F.3d at 281 (holding removal proceedings involved different claims where both charged the petitioner with removability based on aggravated felonies, but charges were based on different convictions involving different sets of factual predicates).

Because Mullins Cruz's two proceedings raise different "claims," i.e., different charges of removability premised on different convictions, the doctrine of claim preclusion does not bar the new removal proceedings.

## II. Derivative Citizenship

We turn to the merits of Mullins Cruz's claim that he has derivative citizenship under the CCA due to his father's citizenship. A foreign-born petitioner like Mullins Cruz has the burden

---

[4] Mullins Cruz does not challenge the charges of removability or the agency's denial of relief under the Convention Against Torture.

4

to establish his U.S. citizenship. *See Gil*, 851 F.3d at 188. In determining whether a person derived citizenship, the applicable law is the law that was in effect at the time the last requirement for derivative citizenship was purportedly fulfilled—here, the CCA, which was in effect when Mullins Cruz turned 18.[5] *See Ashton v. Gonzales*, 431 F.3d 95, 97 (2d Cir. 2005) (applying the law in effect when petitioner fulfilled the last requirement for derivative citizenship).

The CCA provides for the automatic citizenship of a child born outside the United States if the following conditions are met: at least one parent is a citizen, the child is under age 18, and the child "is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence." 8 U.S.C. § 1431(a). The sole issue in dispute is whether Mullins Cruz, who was serving a sentence of incarceration during the relevant period, could be deemed in his father's physical custody between February 2001 (when the CCA went into effect, and at which point his father was already a citizen) and July 2002 (when he turned 18).[6] *See Drakes v. Ashcroft*, 323 F.3d 189, 190–91 (2d Cir. 2003) (holding that CCA only confers citizenship on children who satisfy its requirements on or after its February 2001 effective date). Because we do not agree that Mullins Cruz was in his citizen parent's physical custody during the relevant period, he could not have derived citizenship under the CCA.

We considered the CCA's "physical custody" requirement in *Khalid v. Sessions*, 904 F.3d 129 (2d Cir. 2018). Khalid was in federal pretrial juvenile detention beginning about a month

---

[5] Mullins Cruz concedes that he did not derive citizenship under the law in place before the CCA.
[6] It is undisputed that Mullins Cruz's father naturalized in the 1990s (while his mother did not naturalize until he was over 18) and that Mullins Cruz has resided in the United States as a lawful permanent resident since 1988; the agency also assumed, arguendo, that he remained in his father's "legal" custody until he was 18.

5

before his father naturalized, and when he turned 18 two months later. *Id.* at 130. We concluded there that the statutory term "physical custody" was ambiguous and, looking to "the broader statutory context and its history" and "state law definitions of 'physical custody' in the family law context," concluded that it did not necessarily require that the parent and child reside together during the relevant period. *Id.* at 132–35. We further reasoned that the statute should be construed to promote family unity and concluded that physical custody does not end during a "brief, temporary separation from the naturalizing parent." *Id.* at 138. Instead of requiring actual residence, we found that the physical custody requirement was intended to ensure that the child receiving this benefit had a "strong connection" to both the United States and the U.S. citizen parent. *Id.* at 136–38. The critical factors supporting the conclusion that Khalid satisfied the physical custody requirement included that he lived with his father from Khalid's entry into the United States until his detention and that his detention was brief, temporary, pre-trial, and in a juvenile facility designed to preserve "the family's continued involvement in the juvenile's life during the period of federal pretrial detention." *Id.* at 138–39, 141. Recognizing the significance of Khalid's detention being pretrial, we noted that "[t]here may be reason . . . to determine that a minor is not in a naturalizing parent's physical custody for purposes of 8 U.S.C. § 1431" if the minor is incarcerated after having been adjudicated guilty of a crime. *Id.* at 140.

*Khalid* does not establish Mullins Cruz's entitlement to relief. Unlike Khalid, Mullins Cruz had already been incarcerated for about a year at the time he could possibly have benefited from the CCA, and that incarceration was pursuant to a conviction. *See Lemonious v. Barr*, 802 F. App'x 644, 646-47 (2d Cir. 2020) (summary order) (finding petitioner did not satisfy the CCA's "physical custody" requirement where he was convicted and incarcerated in an adult facility for a

6

period beginning about a year before his parent's naturalization and ending after he turned 18). And there was no possibility that Mullins Cruz could have been returned to his parents' custody as a minor given his indeterminate sentence of six years' to life imprisonment. *See* N.Y. Penal Law § 70.40(1)(a)(i) ("A person who is serving one or more than one indeterminate sentence of imprisonment may be paroled from the institution in which he or she is confined at any time after the expiration of the minimum . . . period of the sentence . . . reduced by the merit time allowance granted."). We acknowledge that Mullins Cruz was housed in a juvenile facility, one designed to maintain contact with family, until after he turned 18, but the duration and authority for Mullins Cruz's detention are the decisive factors here: his post-adjudication incarceration was neither "temporary" nor "brief," but rather permanently separated him from his parents' care as a minor, unlike in *Khalid*. *Khalid*, 904 F.3d at 141. Because Mullins Cruz was not in his citizen parent's physical custody during the relevant period, he did not derive citizenship.

We have considered all of Mullins Cruz's remaining arguments and find them to be without merit. Accordingly, the petition for review is **DENIED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7